**Annette L. HABIG, f/k/a Annette L. Gohagan, Plaintiff–Respondent,**

v.

**John K. GOHAGAN, Defendant–Appellant.**

No. 65086, 65131.

Missouri Court of Appeals, Eastern District, Division Four.

Jan. 10, 1995.

Pat L. Simons, St. Louis, for appellant.

Corinne R. Coston, Law Offices of Mary Ann Weems, Clayton, for respondent.

KAROHL, Judge.

John Gohagan, husband, appeals an amended order of the circuit court that reduced child support for his son and a maintenance obligation. Annette Habig, wife, cross-appeals. There is no longer a need for child support because of emancipation. Both parties claim the trial court erred in its modification of maintenance. In addition, husband contends the trial court erred in denying his motion for relief from an order that granted wife an award for unpaid child support, because it was irregular. We affirm.

The pertinent facts are as follows. On April 20, 1990, the trial court entered a decree dissolving the marriage of the parties. At that time, husband was a tenured professor at Washington University and earned approximately $78,000 per year. Wife was a self-employed educational consultant who earned approximately $20,000 per year. The parties entered into a settlement agreement, which was incorporated into the decree. The parties agreed to divide their marital and separate property equally. Each received approximately $279,000 in property and cash. Husband agreed to pay wife monthly maintenance and child support in the amounts of $1716 and $652, respectively. The parties also agreed their son would be provided with a four-year college education through savings and a tuition remission plan husband had available through Washington University. Furthermore, husband agreed to provide the same amount available through the tuition remission plan of his employer if it were no longer available and also to pay up to $3500 per year for his son's graduate school expenses. If the parties disagreed, the agreement stipulated that the parties would submit their disputes to an arbitrator for settlement.

The agreement did not specify whether maintenance was modifiable. On or about June 15, 1990, the decree was modified by consent to clarify that the maintenance provision was modifiable and to provide that remarriage of husband would not be a change of circumstances that would justify a modification of maintenance.

In May 1990, husband accepted a two-year appointment as an "Expert" by the National Cancer Institute, a federal agency in Washington, D.C. Although the position paid $77,000 per year, which was less than husband was earning at Washington University, he believed it was an honor that would enable him to earn more when he returned to Washington University. Because the appointment was only temporary, husband was permitted to work for the National Cancer Institute and still retain his status as a tenured professor at Washington University. This enabled him to retain the university's benefits, including the tuition remission plan.

In June 1990, husband moved to the home of a cousin in New Jersey and lived there rent-free on weekends. During the week, he commuted to Washington, D.C., where he rented and lived in a small single room for $290 per month. After his move to New Jersey, husband renewed a childhood friendship with a woman who was divorcing. They married later in 1990, when her divorce became final. They then purchased a house in New Jersey for $130,000; each contributed $30,000 to the down payment. Husband further invested an additional $55,000 to remodel the home.

After the parties' divorce was granted, wife bought a home in St. Louis County,

from which she continued to operate her business. This home has a swimming pool, which wife stated was for the use of the parties' son, who continued to attend college outside St. Louis but lived with wife when school was not in session and he was not working or traveling elsewhere.

In 1992, when his two-year appointment ended, the National Cancer Institute offered husband a permanent position at a salary of $83,000, while Washington University offered husband only $63,000 if he returned. Because husband did not receive a better offer from Washington University, he accepted the position at the National Cancer Institute. At the time of the hearing on his motion to modify, husband was earning an annual salary of approximately $86,000.

On March 17, 1992, husband filed an amended motion to modify maintenance and child support. Thereafter, a dispute arose with respect to husband's obligation to pay college expenses and wife's use of the funds set aside for the child's education. In compliance with the terms of the settlement agreement, the matter was submitted for arbitration. The arbitration decision, rendered on May 26, 1992, found that husband was required to pay for the child's room and board as part of his obligation to pay college expenses and that wife had not misused any funds. A consent order was filed with the court on April 15, 1993, in which husband was ordered to pay $7958.61 to wife for unpaid college expenses. Subsequently, husband again amended his motion to modify, alleging, in effect, that his living expenses had increased because he had moved to New Jersey and that wife had chosen to increase her standard of living. Thus, he requested that child support, maintenance, and his obligation to pay college expenses be terminated.

On May 12, 1993, husband's newly-retained counsel moved to set aside the court's April consent order as irregular under Rule 76.01. The motion was denied on August 9, 1993. On September 7, 1993, the court held a hearing on husband's motion to modify. Husband presented evidence consisting of cancelled checks showing wife's membership in several social organizations, purchases of expensive clothing and meals, upkeep of her

yard and swimming pool, and expenditures for vacations. In addition, wife conceded that she buys good-quality clothing at expensive stores, although she attempts to buy the items on sale. Furthermore, husband's expert, a CPA and a professor at Washington University, testified that wife counted her FICA tax obligation twice on her Statement of Income and Expenses. He also testified that some amounts that wife had deducted from her gross income to arrive at her taxable income had also been erroneously included as an expense in her Statement of Income and Expenses. Husband also offered wife's income tax returns into evidence.

On October 6, 1993, the court entered findings of fact and conclusions of law and an order granting, in part, husband's motion to modify. It reduced child support to $452 per month, retroactive to January 1, 1992, and ending September 3, 1993. It reduced maintenance to $1200 per month, retroactive to March 1, 1992. The order also denied wife's motion for attorney's fees.

Both parties moved for a new trial or to amend the October 6 order. Wife also moved to reopen the case to adduce new evidence. On November 10, 1993, the court denied these motions. However, it entered amended findings of fact and conclusions of law and an amended order, which reduced maintenance to $1325 per month, retroactive to April 1, 1992. The appeals of both parties followed.

In his first point on appeal, husband claims the trial court erred in failing to eliminate or further reduce maintenance, because the weight of the evidence shows that wife is able to meet all, or almost all, of her reasonable needs without any maintenance. Specifically, husband claims that the following findings of fact are against the weight of the evidence:

1. The income of [wife] from self-employment has increased since the dissolution of the parties' marriage in April of 1990. [Wife] received approximately $17,890.00 in 1990, $21,332.00 in 1991, and $25,440.00 in 1992 from self-employment.

\* \* \* \* \* \*

3. The Court does not find that [wife's] monthly income from self-employment is

understated by $718.00 on her Statement of Income and Expense.

\* \* \* \* \* \*

9. [Wife's] current expenditures exceed her reasonable needs by approximately $400.00 a month.

\* \* \* \* \* \*

12. There was no credible evidence that [wife] is now working part time. She is conducting seminars at least 50 days a year. In addition to those, she spends considerable amounts of time developing and preparing for her business.

\* \* \* \* \* \*

14. [Wife] is healthy. There was no credible evidence that she is voluntarily or intentionally not working additional time.

\* \* \* \* \* \*

15. [Wife] cannot meet her reasonable monthly needs from her own earnings and investment income.

In contrast, wife's first point in her cross-appeal states the trial court erred in granting husband's motion to modify, because there was no change of circumstances that mandated reduction of maintenance and child support.

■ Our analysis is governed by § 452.370 RSMo Cum.Supp.1993, which requires a change in circumstances that is substantial and continuing, such as to render the original judgment unreasonable, before a motion to modify will be granted. It is the movant's burden to establish this fact. *Campbell v. Campbell*, 825 S.W.2d 319, 321 (Mo.App. 1992). Reversal of a modification order is appropriate only when the order is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ In part we agree with husband that findings of fact # 1, # 3, and # 9 are against the weight of the evidence, when read together. Husband's expert testified that, according to her 1992 income tax return, wife deducted business expenses for the use of her home, which totaled $2054, from her "tentative profit" of $27,494, thereby reduc-

ing her earnings to $25,440. However, she also included these same expenses in her Statement of Income and Expenses, on which the court based its maintenance award. Wife's income tax return and Statement of Income of Expenses, which are in evidence, support the expert's testimony of a "double" deduction. This sum cannot be both a business expense to offset gross income and a personal living expense. Wife did not rebut this evidence. Thus, either findings of fact # 1 and # 3 are unsupported or # 3 is unsupported. For simplicity, we leave the personal expenses unchanged and consider wife's earnings to be $27,494.

Furthermore, we agree that finding of fact # 3 is unsupported by the evidence for other reasons. Husband's expert testified that wife's evidence of monthly expenses of $4982 were overstated, because (1) they included $550 for support of the parties' son, who was emancipated at the time of the hearing, and (2) they included a "double payment" of FICA taxes, which should have been $289 instead of $578. Wife's income tax return and Statement of Income and Expenses support this testimony. Wife again presented no evidence in rebuttal. Thus, we find wife's claimed expenses should be reduced by $550 and $289, bringing her expenses to $4142. Both parties claim the trial court erred in lowering maintenance by $400 per month. Wife claims there were no changed circumstances justifying the reduction. Husband claims that based on the evidence of the nature and extent of wife's expenditures, maintenance should have been eliminated completely or at least reduced further. We reject both claims and hold the evidence supported a finding that wife's expenditures for clothing, entertainment, clubs/organizations, and yard/pool maintenance were unreasonable by approximately $400 per month. Accordingly, her proven, reasonable monthly expenses are $3742.

The calculation of maintenance should have been based on (1) income of $29,502 per year, consisting of earnings of $27,494 and dividend and interest income of $1829. This is $2458 per month. Hence, wife's reasonable monthly expenses of $3742 exceed her monthly income of $2458 by $1284. The

court modified the maintenance and awarded wife $1325 per month. The difference in the amount awarded and the amount supported by the evidence is insufficient to find the award is unsupported by the evidence, because the adjustment decreasing actual expenses by an amount the court considered extravagant is approximate.

We reject the claim that findings of fact # 9, # 12, # 14, and # 15 are against the weight of the evidence. The revised calculations show that wife cannot meet her reasonable monthly needs from her own earnings and investment income. This is true even after subtracting $400 per month for total expenses as payments for unnecessary items.

With regard to findings of fact # 9, # 12, and # 14, wife testified that she would be lucky if she earned $20,000 in 1993. Wife's net earnings had increased. She earned $17,890 in 1990, $21,332 in 1991, and $27,494 (adjusted) in 1993. She testified that her income declined because several clients cancelled contracts. When asked on cross-examination if she trained others more than a third of the days in the year, she replied, "Yes. I would think so. But I do not know without adding it up." In addition, she testified that she spends time preparing for her seminars at home, the facility where she is working, or a hotel at night, if she is traveling.

The court found wife was not working part time, as argued by husband, and rejected husband's contention she was voluntarily or intentionally not working additional time. In addition, the court found wife conducts seminars at least 50 days a year and she spends additional time preparing for her business. Wife's testimony supports such findings. We defer to the trial court's opportunity to have judged the credibility of the witnesses. *Early v. Early*, 659 S.W.2d 321, 323 (Mo.App. 1983). We deny both parties' first points on appeal.

■ In his second point on appeal, husband claims the trial court erred in failing to eliminate or further reduce maintenance, because the weight of the credible evidence was that husband cannot meet his reasonable needs and continue to pay maintenance of $1325 per month without depleting his retire-

ment savings and equity in his other assets. Specifically, husband claims the following findings of fact are against the weight of the evidence:

> 16. [Husband's] net worth has decreased since the date of dissolution of the marriage by approximately $70,000.00....

> \* \* \* \* \* \*

> 17. [Husband's] income has increased since the decree of dissolution....

> \* \* \* \* \* \*

> 26. ... There is no credible evidence that the cost of living in New Jersey, commuting to Washington, D.C. and renting a room there was less than the cost of reasonable housing in Washington, D.C., in nearby Maryland and in nearby Virginia.

Husband also claims that conclusion of law # 1, to the extent that it states husband is "having difficulty meeting his needs without depleting his remaining capital" erroneously applies the law. Husband contends the uncontroverted evidence showed he *could not* meet his reasonable needs, rather than just *have difficulty* meeting them.

In contrast, wife's second point on appeal is the trial court erred in its determination that husband's reasonable needs exceeded his income. In support of this, wife claims the court failed to consider husband's decision to work in Washington, D.C., but live in New Jersey and maintain two "homes" made his living expenses unnecessarily high. In addition, she claims the termination of the child support obligation on September 3, 1993, offers husband additional income.

The court's finding that husband's net worth decreased by approximately $70,000 is supported by the evidence. Husband's evidence showed that he owned property worth $279,300 at the date of dissolution and he owned only $190,948 as of the date of the hearing for the motion to modify, a reduction of $88,000, rather than $70,000, as in finding of fact # 16. However, the following exchange occurred on cross-examination of husband:

> Q. This [husband's Exhibit K] is a summary of the property owned by the parties

in April of 1990 and again in September of 1993; isn't it?

A. True.

\* \* \* \* \* \*

Q. Don't you have ... a federal retirement plan?

A. I do have a federal retirement plan, which unfortunately is not—

Q. And it's not listed here; is it?

A. Unfortunately, it's not listed here....

Q. This exhibit doesn't include your federal retirement; does it?

A. That's true.

Thus, husband undervalued and/or omitted pension amounts. We find the court's finding of fact that husband's net worth decreased by $70,000, rather than the claimed $88,000, was not against the weight of the evidence, considering the omission of these amounts. Further, to the extent any reduction occurred as a result of remarriage, husband has agreed the remarriage is not to be considered to reduce maintenance.

Likewise, the court's finding of fact that husband's income increased since the date of dissolution is supported by the evidence. Husband's September 6, 1993, Statement of Income and Expenses stated monthly wages of $3319.20. On cross-examination, husband testified he receives 26 paychecks a year. Thus, husband's annual salary was $86,299. The evidence also showed husband's income at the time of dissolution was $78,000. Husband therefore realized an increase in income of $8299, and the court's finding of fact reflected this change.

In regard to finding of fact # 26, husband sought to prove that his renting a room in Washington, D.C., and owning a home in Haddonfield, New Jersey, was less expensive than the cost of reasonable housing in the area near his work. However, the only evidence husband presented in support of this was the Cost of Living Index prepared by the American Chamber of Commerce Researchers Association. This index failed to list nearby Virginia and Maryland and their respective indexes. Husband presented no other evidence in support of his claim. Thus, the court's finding of fact # 26 that there was no credible evidence that the cost of living in New Jersey, commuting to Washington, D.C., and renting a room there was less than the cost of reasonable housing in Washington, D.C., in nearby Maryland, and in nearby Virginia is not against the weight of the credible evidence.

■■ We turn now to wife's point that the trial court erred in determining husband's expenses exceed his income. On his Statement of Income and Expenses, husband stated his monthly expenses total $4319, not including his maintenance payment to wife or child support. Husband's figures include the cost of supporting his current wife. Husband's increase in expenses due to his remarriage may not be the grounds for modification of his maintenance obligation. *Crowley v. Crowley*, 838 S.W.2d 95, 96 (Mo.App.E.D. 1992). The parties agreed on this issue. Thus, we subtract the amount husband claims is used to support his wife, $761. In addition, husband's decision to buy a home in New Jersey, in which he resides on weekends with his wife and stepdaughter, rather than locate in Washington, D.C., may be directly attributable to his remarriage. Thus, we also subtract the amount of the mortgage payment on the New Jersey home, $1479. After deduction of these sums, husband's monthly expenses are $2079.

■■ Husband's monthly income totals $7191. The evidence shows that husband's expenses, including his maintenance and his child support obligation, never exceeded his income. Now the child support has terminated. Hence, the trial court erred in determining husband's reasonable needs exceeded his income, but the error does not constitute a basis for not decreasing the maintenance award. The amount of maintenance is based on need *and* ability to pay. Section 452.335 RSMo Cum.Supp.1993. Because we agree with the trial court that wife's reasonable needs do not exceed $1325 per month, the modified award was not error. Both parties' claims of error on the award of reduced maintenance are denied.

In his final point, husband claims the trial court erred in denying his motion for relief from its April 1993 consent order, because the order was irregular and should therefore

738

have been set aside. In response, wife argues there was no error, because the order was a consent order that merely ratified the earlier arbitration decision and set a specific amount husband was to pay.

Rule 74.06(b) provides in part that relief from a judgment may be granted because a judgment is irregular. To be irregular, a judgment must be materially contrary to an established form and mode of procedure for the orderly administration of justice. *Burris v. Terminal Railroad Ass'n*, 835 S.W.2d 535, 538 (Mo.App.E.D.1992). An irregularity must render the judgment contrary to a proper result. *Id.* The rule reaches only procedural errors which, if known, would have prevented entry of a judgment. *Id.*

In support of his point, husband cites various inconsistencies with respect to the filing dates and titles of pleadings. However, the procedural details did not render the judgment contrary to the agreed result. Husband cannot contest the substance of the order. It was based on the arbitration decision to which husband consented. Therefore, husband was not prejudiced by any irregularity. Point denied.

We affirm the judgment of the circuit court.

AHRENS, P.J., and SIMON, J., concur.