**Robert WHITAKER and Georgia Kubiak, Appellants,**

**v.**

**Calloway HUFFAKER, Steven Haley and Dessie Whitaker, Appellees.**

**No. 08–89–00221–CV.**

Court of Appeals of Texas, El Paso.

May 9, 1990.

Rehearing Overruled June 6, 1990.

Richard D. Davis, Austin, for appellants.

Joe K. McGill, County Atty., Seminole, James H. Milam, John A. Flygare, Jones, Trout, Flygare, Moody & Brown, J.T. Kelley, Crenshaw, Dupree & Milam, Lubbock, for appellees.

Before OSBORN, C.J., and WOODARD and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

This is an appeal from a summary judgment granted to Appellees Haley and Whitaker. Calloway Huffaker, although carried as an Appellee, is not involved in this appeal, the cause of action against him having been severed and transferred to another county. We affirm the judgment of the trial court.

Appellants are the son and daughter of Homer Whitaker, who died testate in September 1981. Appellee Dessie Whitaker is the widow of the deceased and stepmother of the Appellants. Appellee Haley was the attorney for the deceased and drafted his last will. Following Homer Whitaker's death, Haley was retained by the widow to pursue her interests in the estate. Appellants hired attorney Calloway Huffaker to represent them. A conflict almost immediately arose as to the community or separate property characterization of the assets. On December 3, 1981, an interim settlement agreement was signed by all parties with the goal of reducing probate costs, narrowing the controversy and avoiding litigation. Under the terms of the agreement, it was deemed unnecessary to appoint an administrator, the executor named in the will having declined to serve at their request, and the will was to be filed as a muniment of title only. Under the agreement, Haley and Huffaker, as

attorneys for the respective parties, were given broad powers of attorney and pending final settlement, were to marshall and manage the estate assets. Disbursements from the joint account required the signatures of both attorneys. On July 14, 1982, a final settlement was signed by all parties. Sometime in 1982, Appellants consulted another attorney about their displeasure with Huffaker over some partial distribution checks sent to them, marked "paid in full." According to Appellants, they were in shock at that time over the way Huffaker was handling the estate, but did not intend to sue him as long as he had their money. On March 16, 1983, Appellants revoked the powers of attorney under which Huffaker and Haley had been operating. After consulting still another attorney in December 1983 about filing suit against Huffaker, Haley and Dessie Whitaker, they filed a complaint against Huffaker with the bar grievance committee in May 1984. In November 1985, Appellants filed suit in Midland County against Huffaker and his law firm over their handling of the estate. That suit was subsequently transferred to Lynn County. In November 1986, they brought the present suit against Huffaker and Appellees asserting three distinct causes of action:

(1) Fraud and conspiracy to defraud on the part of Huffaker and Appellees in inducing the Appellants to execute the interim settlement agreement of December 3, 1981;

(2) Breach of fiduciary duty to Appellants on the part of Huffaker and Haley; and

(3) Breach of the December 3, 1981 agreement by Dessie Whitaker by failing to deliver property as required by the agreement.

Appellees answered with general denials and also pled the defense of limitations. Appellees each filed motions for summary judgment, with their own affidavits attached and relying upon the pleadings and filed depositions of Appellants and Haley. Prior to hearing, they filed amended motions without attaching new affidavits but referring to those previously on file. The trial court granted these amended motions and severed the action against Huffaker.

Appellants present a single point of error challenging the propriety of the summary judgments on the basis of disputed issues of material facts, but in reality raising three areas of complaint: a procedural defect in the summary judgment proof, the failure of Appellees to eliminate factual dispute on the elements of three alleged causes of action, and failure to establish the limitation defense as a matter of law.

■ Referring to the alleged procedural defect, Appellants contend that the failure to attach new affidavits to the Appellees' amended summary judgment motions is fatal. Their position is that the amended motions superseded the prior motions and therefore the attachments to the original motions are no longer available for consideration. *Armstrong v. Rice*, 556 S.W.2d 620, 622 (Tex.Civ.App.—Texarkana 1977, writ dism'd), *appeal after remand*, 616 S.W.2d 415 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.). The argument is without merit for several reasons. First, more recent authority, based on the present wording of Tex.R.Civ.P. 166a(c), suggests that once filed, an affidavit in support of summary judgment is subject to consideration in connection with a subsequent amended motion even though not attached to the latter. *McCurry v. Aetna Casualty and Surety Company*, 742 S.W.2d 863, 867 (Tex.App.—Corpus Christi 1987, writ denied).

■ Second, the record fails to disclose any challenge or objection in the trial court to this claimed defect in the form of summary judgment proof. Failure to object to defects of form constitutes a waiver of appellate review on that issue. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979); *Vaughn v. Burroughs Corporation*, 705 S.W.2d 246, 248 (Tex.App.—Houston [14th Dist.] 1986, no writ).

■ Finally, even if the affidavits were rejected as support, the summary judgments would stand on the basis of the pleadings and supporting depositions refer-

enced by the amended motions. The only cause of action to which the affidavits were uniquely applicable is the conspiracy/fraudulent inducement allegation. That cause of action fails, however, due to the absence of a genuine issue of a material fact.

Two of Appellants' causes of action were ripe for summary judgment without reference to the challenged affidavits. First, the breach of fiduciary duty alleged against Haley was solely predicated upon his alleged status as an executor of the estate of Homer Whitaker. The exhibits attached to the petition as well as the depositions of the Appellants and Haley clearly reflect that there never was an executor or administrator of the estate. As a matter of law, the allegation fails. In fact, the arrangement for joint control of the estate assets by Huffaker and Haley was a protective device reflecting the lack of mutual trust between the heirs, rather than the trust which is the hallmark of any fiduciary relationship. Second, the breach of contract action against Dessie Whitaker is also without merit as a matter of law. The petition alleges solely a breach of the December 3, 1981 interim agreement, not the final settlement of July 14, 1982. The interim agreement did not require the delivery of any property by Dessie Whitaker to the Appellants, as generally alleged in the petition.

Turning to the cause of action alleged against the three defendants for conspiracy to defraud Appellants by inducing them to execute the interim settlement agreement of December 3, 1981, it is necessary to review the summary judgment record to determine whether a disputed material fact issue exists that would preclude a summary judgment. *Bayouth v. Lion Oil Company*, 671 S.W.2d 867, 868 (Tex.1984). The burden was on the movants to negate completely that cause of action as a matter of law. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827, 828 (Tex.1970). The appellate court must accept as true the non-movant's version of the evidence. *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733, 734 (Tex.1985). Every reasonable inference must be indulged in favor of the non-movants and any doubts as to the existence of factual issue are to be resolved in their favor. *Bayouth*, 671 S.W.2d at 868. Evidence which favors the movant's position will not be considered unless it is uncontroverted. *Great American Reserve Insurance Company v. San Antonio Plumbing Supply Company*, 391 S.W.2d 41, 47 (Tex.1965). If that uncontradicted evidence is from an interested witness, it cannot be considered as doing more than raising an issue of fact, unless it is clear, direct, positive and free from inconsistencies and contradictions. *Great American*, 391 S.W.2d at 47.

In Appellees' summary judgment proof are affidavits of Haley and Dessie Whitaker and the depositions of Haley, Robert Whitaker and Georgia Kubiak. Attached to Appellants' responsive pleadings are affidavits of Kubiak and Carol Reinert, a certified public accountant employed by Appellants to examine the estate financial records. Kubiak, in her deposition, admits that only Huffaker was present and induced her and her brother to sign the interim settlement agreement. In response to requests for facts she might have relating generally to conspiracy, her replies were "[t]he way the estate was handled," "they ignored the will," and "everything seemed to go in favor of the widow." Typical of Kubiak's replies to requests for facts showing conspiracy is the following exchange:

Q. Having had some time to think about that, does anything come to mind that would—you think would be evidence of a conspiracy on the part of these people?

.    .    .    .    .

A. They completely ignored the fact that $140,000.00 was sifted through a bank account in Lamesa over there. They only accounted for $123.00 of that. They completely ignored anywhere in the estate the mention of the bank account in Seagraves, Texas.

Q. All right.

A. It was mentioned on the tax returns, but it was never declared into the estate funds.

Q. Now. you have given me some facts and figures. Of course, these are conclusions on your part. Do you have any evidence, records and so forth, to substantiate that fact?

A. Yes, sir, I do. It has already been entered here. It was the information that came from the C.P.A., Shirley Stephens. It's already been entered over there.

Q. Could you show me the list, please?

A. Yes, sir. (pause) I think this one here is the one that shows it most clearly. Accounts were closed out over at First Federal Savings and Loan, sixty some odd thousand dollars.

Money was transferred and juggled around right before my dad died and right after he died. The attorneys had responsibility for seeing that this was all gathered up. Right there is the bank account.

You can also see where she collected the land payments that year. Now, this was separate property, the land payment. She collected those land payments and deposited $14.49 of it in the bank.

Q. Are you saying, that's what these records show?

A. I am saying that this is that Lamesa bank account, where that much money was run through it and they accounted for $123.00 of that bank account.

Q. That's your conclusion, from what these show, that there was a conspiracy?

A. Yes, sir. Otherwise, my attorney would have been more diligent in coming forward with these records. He is bound to have known it. He is bound to have known they existed.

After admitting that she had never talked with Dessie Whitaker before entering into the final settlement agreement, the following ensued:

Q. Your conversations were strictly with Mr. Huffaker?

A. Yes. He did it. He did all of it.

Q. (by Mr. Davis) All of what?

A. The handling of the whole, entire estate.

.    .    .    .    .

Q. In regards to this matter here—let me ask you this, do you have any knowledge that Dessie was doing anything other than just following the advice of her attorney?

A. During what time period?

Q. During this time, from the time she hired him until the matter was settled?

A. No, I think she was probably following her attorney's advice.

Q. All right. Just like you were following your attorney's advice?

A. Yes. She probably was.

.    .    .    .    .

Q. Well, what I am saying is, if this is a conspiracy, you don't have any evidence that Dessie Whitaker had anything to do with this, do you?

A. We don't have any that she didn't. We don't have any evidence that she wasn't in on it.

Q. You don't have any evidence that she was?

A. This bank account—yeah, I think maybe I do. This bank account right here was in her name, and she forged my daddy's signature on it. I do have a copy of that signature card.

Q. Other than that, do you have any other evidence?

A. I don't know what—no. I don't know what else there would be.

In his deposition, Robert Whitaker testified as follows:

Q. Do you know of any evidence of a contract, between those three people, to conspire to—what would be a fair settlement of the estate, where all of the estate would not be made known to all of the parties at the time of the settlement?

A. Except what you can read between the lines.

Q. Meaning that there hasn't been a proper accounting? I am just trying to figure out what you are talking about, "between the lines"—"what you

can read between the lines," what did you mean by that?

A. Well, will I be allowed to explain it?

Q. Yes, sir.

A. We were told to get rid of the bank in Lamesa by Calloway Huffaker.

Q. All right.

A. Those instructions were directly from him.

Q. All right.

A. By doing that, that got the bank out of it. The bank would have handled it right, for one thing. There were monies and properties not brought into the estate by Calloway Huffaker, who was representing us.

Q. All right.

A. By him not bringing it in like that, some kind of a deal had to be cut for a quick cash settlement for us. You know, like, "Dessie, you keep this, and we will take care of them with this."

Q. But your evidence—you don't really have any evidence of that, do you, Robert?

A. No.

As can be seen from the foregoing, Appellants' testimony showed only that they were dissatisfied with the performance and accounting of their own attorney. Their testimony amounts to no evidence of a conspiracy on the part of Dessie Whitaker, Haley and Huffaker to defraud them out of their share of the estate, let alone a conspiracy to defraud them of their inheritance "by inducing Plaintiffs to sign a settlement agreement [the agreement signed December 3, 1981]...."

On the other hand, Dessie Whitaker in her affidavit, states that she has no knowledge whatsoever about any conspiracy or agreement to defraud Appellants of their inheritance rights. Haley in both deposition and affidavit declares that there was no conspiracy or fraud on his part in any of the negotiations or settlement agreements and that he did not conspire with Calloway to defraud the Appellants. Applying the previously enunciated principles, we find clear, positive and direct statements by Appellees that there was no conspiracy to defraud in support of their motions for summary judgment. In opposition, Appellants present evidence only that they were induced to sign the interim agreement by their own attorney, not by anyone else, and conjecture from their dissatisfaction with their attorney's performance and their feeling that their stepmother got more than her share of the estate that there must have been a conspiracy of some kind. This doesn't go to the issue of whether Appellees joined with Huffaker in a conspiracy to defraud by inducing Appellants to sign the interim agreement. Based upon the summary judgment proof, we conclude that there is no genuine issue in connection with the allegations of fraudulent inducement to execute the agreement.

In view of our disposition of the fraudulent inducement cause of action, it is unnecessary to consider the limitations question other than to acknowledge in passing that that cause of action is now governed by Section 16.051 of Tex.Civ.Prac. & Rem. Code Ann. (Vernon 1986), which provides that for "[e]very action for which there is no express limitations period," suit must be brought within four years after the day the cause accrued. The Supreme Court of Texas in *Williams v. Khalaf,* 33 Tex.Sup.Ct.J. 354, 356 (Mar. 31, 1990), has determined that the four year limitations' period applies to all fraud actions. We overrule Point of Error No. One.

The judgment of the trial court is affirmed.