**Lougay Malone TOLES, Appellant,**

v.

**H. Edward TOLES, III and John V. McShane, McShane, Davis & Hance, L.L.P., Appellees.**

No. 05–98–00844–CV.

Court of Appeals of Texas, Dallas.

Aug. 29, 2003.

See also 45 S.W.3d 252.

Bill C. Hunter, Dallas, for Appellant.

Lawrence J. Friedman, Friedman & Feiger, L.L.P., Dallas, A. Robert Gloyna, Campero & Gloyna, P.C., Irving, George R. Bienfang, McShane, Davis, & Hance, L.L.P., Dallas, for Appellees.

Before Justices MOSELEY, BRIDGES, and LAGARDE.[1]

## OPINION

Opinion by Justice MOSELEY.

Lougay Malone Toles (Lougay) sued her ex-husband H. Edward Toles, III (Ed) and his former lawyers, John V. McShane and the law firm of McShane, Davis & Hance, L.L.P.[2] (the McShane parties). The trial court granted summary judgment in favor of Ed and the McShane parties on all of Lougay's claims. Lougay appeals. In two issues, she complains the trial court erred in granting the McShane parties' motion for summary judgment. In three issues, she complains the trial court erred by granting Ed's motions for summary judgment. We affirm in part and reverse and remand in part the trial court's judgment pertaining to the McShane parties and to Ed.

### BACKGROUND

Lougay and Ed were married. In February 1987, they bought a home where they lived together. They later separated, with Lougay continuing to live in their home. In 1993, Ed filed for divorce. John McShane and McShane, Davis & Hance, L.L.P. represented Ed during the divorce suit. In the course of the divorce proceedings, the divorce court entered an "Agreed Temporary Injunction" prohibiting the parties from taking certain actions and specifically allowing them to take other actions. Less than one month later, the divorce court entered an "Agreed Temporary Order" providing for temporary conservatorship of the parties' child, support for Lougay and the child, payment of liabilities (including mortgage payments) and health insurance, and possession of certain property. On December 20, 1994, the divorce court entered an order modifying the Agreed Temporary Order to decrease the support Ed was required to pay to Lougay and ordering Ed to make certain

---

1. The Honorable Sue Lagarde, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

2. Now McShane & Davis, L.L.P.

payments out of a joint checking account held by Ed and Lougay. Specifically, the divorce court ordered Ed to make mortgage payments he had missed. Ed filed for bankruptcy the following February.

The holder of the mortgage on the Toles' home, Guaranty Federal Bank, F.S.B., sought to foreclose on the house because Ed had not made several mortgage payments. Guaranty Federal obtained, by default, a lift of the bankruptcy stay and posted the home for foreclosure. Lougay subsequently requested and obtained a temporary restraining order from the divorce court preventing the foreclosure sale. Lougay also requested the appointment of a receiver. On October 23, 1995, the divorce court appointed Greg Pape as receiver to sell the Toles' home.

On May 6, 1996, the divorce court entered an order approving the sale of the Toles' home. Lougay refused to execute the contract for the sale of the home and had testified under oath that she did not intend to move from the home on the scheduled closing date of May 31, 1996. On May 29, 1996, the divorce court signed an emergency order, *ex parte*, ordering packers and movers to enter the property and to pack and transport its contents to a storage facility on May 30, 1996. The next day, the divorce court signed an order compelling Pape to execute any necessary documents to sell the home and transfer title. The home was finally sold on May 31, 1996. After further proceedings, including a jury trial on Lougay's tort claims against Ed, the divorce court signed a final divorce decree on November 22, 1996.[3]

Lougay filed the present suit on January 26, 1996, as a petition to perpetuate testimony. The docket sheet indicates Lougay filed a first amended petition on January 8, 1997, but that petition is not in our record. In her second amended petition, Lougay complained the divorce court's orders and proceedings appointing Pape as receiver and approving the sale of the home were "fatally deficient" in several respects, and the actions of several of the parties involved, including Ed, the McShane parties, Pape, and others,[4] were wrongful. Lougay alleged causes of action for negligence, "wrongful deprivation and destruction of homestead rights and eviction," tortious interference with contract (against the McShane parties only), "abuse of litigation process," breach of fiduciary duties (against Pape), and breach of contract (against Ed only).

The McShane parties and Ed filed motions for summary judgment against Lougay's claims. The McShane parties asserted: (1) that they could not be liable on any cause of action because as attorneys representing an opposing party in litigation,

---

**3.** For further details of the proceedings in the divorce case, see our opinion in *Toles v. Toles,* 45 S.W.3d 252 (Tex.App.-Dallas 2001, pet. denied).

**4.** Guaranty Federal was one of the parties sued by Lougay. In an unpublished opinion in a related appeal, we affirmed the trial court's summary judgment in favor of the bank on all of Lougay's causes of action in her second and third amended petitions against the bank. *See Toles v. Guaranty Fed. Bank,* No. 05–98–00833–CV, 2002 WL 1372535 (Tex.App.-Dallas June 26, 2002, pet. denied) (not designated for publication). Lougay's claims against the bank were sev-ered into a separate action and she appealed the summary judgment in favor of the bank. We affirmed the summary judgment on the grounds that all of Lougay's causes of action against the bank were improper collateral attacks on the divorce court's final divorce decree. *Id.,* slip op. at *4–*5. We concluded the bank had established the defense of collateral attack as a matter of law and that "the defense, once established as a matter of law, bars all of [Lougay's] claims—regardless of when pleaded—that flow from the divorce court's orders concerning the sale of [Lougay's] house." *Id.* at *5.

they owed no duty to Lougay; (2) that as a matter of law, Texas did not recognize several of Lougay's alleged causes of action; and (3) that the summary judgment evidence negated at least one element of each of the remaining causes of action, and thus that they were entitled to judgment as a matter of law. Ed's motion asserted that as a matter of law, Texas did not recognize some of Lougay's causes of action and that the summary judgment evidence negated at least one of the elements of the remaining causes of action. Both motions attached certified copies of several orders, pleadings, and the final divorce decree from the divorce court. The motions also relied on alleged judicial admissions in Lougay's live petition.

While these motions were pending, Lougay filed a third amended petition, expanding somewhat her factual allegations and adding alleged causes of action for "abuse of litigation, litigation process & process," aiding and abetting Pape's breach of fiduciary duties (against Ed and the McShane parties), intentional infliction of emotional distress, invasion of privacy, spoliation of evidence, constructive fraud, and conspiracy.

The McShane parties and Ed each filed first amended motions for summary judgment. Each motion raised the same grounds as the respective movant's original motion and specifically addressed the new causes of action alleged in Lougay's third amended petition. Both motions incorporated by reference the summary judgment evidence attached to the respective original motion. The McShane parties attached to their first amended motion for summary judgment an affidavit of John V. McShane swearing that, at all times and in all fact situations pled in Lougay's third amended petition, the McShane parties were acting as Ed's attorneys in the divorce action.

On July 29, 1997, the trial court overruled all of Lougay's objections to the McShane parties' summary judgment evidence and granted the McShane parties' summary judgment motion as to all of Lougay's claims against them. On August 29, 1997, the trial court overruled Lougay's objections to Ed's summary judgment motion and evidence and granted the motion as to all of her claims against Ed except the claims of spoliation of evidence and intentional infliction of emotional distress. The court did not specify the grounds on which it was granting either motion.

On July 29, 1997, Ed filed a second motion for summary judgment. The trial court sustained Lougay's objections to some of Ed's summary judgment evidence, but granted this motion on September 8. Again, the court did not specify the grounds on which it was granting Ed's second motion.

Pape filed a motion for summary judgment on October 17, 1997. The trial court, without specifying the grounds, granted Pape's motion on May 8, 1998. All claims Lougay asserted against the other named defendants, not parties to this appeal, were dismissed, and the trial court signed a final judgment on May 20, 1998.

Lougay appeals raising issues against the McShane parties and Ed, but she raises no issues against Pape. On appeal, Lougay acknowledges she has no cause of action for spoliation of evidence after the supreme court's decision in *Trevino v. Ortega*, 969 S.W.2d 950, 952 (Tex.1998).

### SUMMARY JUDGMENT STANDARDS

Appellate courts apply well-established standards when reviewing a summary judgment. *See Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex. 1985). To prevail on summary judgment, a defendant must either disprove at least

one element of each of the plaintiff's theories of recovery or plead and conclusively establish all the essential elements of an affirmative defense. *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.,* 12 S.W.3d 827, 832 (Tex.App.-Dallas 2000, no pet.). If the defendant establishes a right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact to preclude summary judgment. *Id.* If the trial court's order granting summary judgment does not specify the grounds for its decision, the summary judgment will be affirmed if any of the theories advanced are meritorious. *Rogers v. Ricane Enter., Inc.,* 772 S.W.2d 76, 79 (Tex.1989). We review a trial court's decision to grant a summary judgment *de novo. Foreness v. Hexamer,* 971 S.W.2d 525, 527 (Tex.App.-Dallas 1997, pet. denied).

### SUMMARY JUDGMENT EVIDENCE

A trial court may consider all evidence on file at the time of the summary judgment hearing, and all evidence filed with the permission of the court after the hearing but before judgment. *Judwin Prop., Inc. v. Griggs & Harrison,* 911 S.W.2d 498, 503 (Tex.App.-Houston [1st Dist.] 1995, no writ). Evidence attached to an original motion for summary judgment may be considered when a trial court decides an amended motion for summary judgment. *See Brandes v. Rice Trust, Inc.* 966 S.W.2d 144, 148 (Tex.App.-Houston [14th Dist.] 1998, pet. denied); *Whitaker v. Huffaker,* 790 S.W.2d 761, 763–64 (Tex.App.-El Paso 1990, writ denied).

### THE MCSHANE PARTIES

In two issues, Lougay argues the trial court erred in overruling several of her objections to the McShane parties' amended motion for summary judgment, concerning the McShane parties' "pleading deficiencies" and "no cause of action" grounds for summary judgment, and that the trial court erred by granting that motion. We discuss these issues together.

### 1. *Lougay's Procedural Assertions*

Lougay raises two procedural matters regarding the McShane parties' motion for summary judgment: (1) the motion raised the defense that the McShane parties were not liable in the capacity in which they were sued without a verified pleading; and (2) the motion amounted to special exceptions or a general demurrer disguised as a motion for summary judgment and circumvented her right to replead if the special exceptions had been granted.

The McShane parties moved for summary judgment on the grounds, *inter alia,* that they owed no duty to Lougay and could not be liable on any of Lougay's claims because those claims arose out of the attorneys' actions on behalf of their client, Ed, who was Lougay's party opponent in the divorce action. In Lougay's summary judgment response, she argued that the McShane parties' position was in fact an argument that they were not liable in the capacity in which they were sued, and that defense had not been raised by a verified pleading as required by rule of civil procedure 93(2). *See* TEX.R. CIV. P. 93(2). Therefore, she contends the trial court erred in considering this ground for summary judgment.

A pleading alleging that a "defendant is not liable in the capacity in which he is sued" must be verified by affidavit. TEX.R. CIV. P. 93(2). The McShane parties did not file a verified denial. However, the McShane parties' motion for summary judgment did not assert that they were not liable in the capacity in which they were being sued. Rather, their argument was that, as a matter of law, they were not liable to Lougay because they owed her no duty as non-client

who was a party opponent against their client—Ed. The burden is on a plaintiff to prove the existence and violation of a legal duty owed by the defendant in order to establish tort liability. *Coleman v. Hudson Gas & Oil Corp.*, 455 S.W.2d 701, 702 (Tex.1970). Lack of duty is not an affirmative defense because duty is an essential element of a plaintiff's case. *Id.* Thus, the McShane parties' contention does not fall within the ambit of rule 93(2), and the lack of verification does not prevent the McShane parties from asserting their argument. We now turn to whether the trial court properly considered some of the McShane parties' summary judgment grounds.

The McShane parties moved for summary judgment on the claims of "wrongful deprivation and destruction of homestead rights and eviction," and "abuse of litigation and litigation process" on the ground that no such causes of action exist under Texas law. Lougay contends the trial court erred by granting summary judgment in favor of the McShane parties because their motion represented a special exception disguised as a motion for summary judgment.

 Generally, a movant must specially except before urging a motion for summary judgment that alleges a failure to state a claim, thereby giving the plaintiff an opportunity to amend deficient pleadings. *Wilkinson v. Dallas/Fort Worth Int'l Airport Bd.*, 54 S.W.3d 1, 12 (Tex.App.-Dallas 2001, pet. denied), *cert. denied*, 534 U.S. 1128, 122 S.Ct. 1065, 151 L.Ed.2d 968 (2002). A court may not generally grant a "no cause of action" summary judgment without giving the plaintiff an opportunity to plead a viable cause of action. *White v. Bayless*, 32 S.W.3d 271, 274 (Tex.App.-San Antonio 2000, pet. denied). However, if the petition affirmatively demonstrates that no cause of action

exists or that the plaintiff's recovery is barred, then the plaintiff need not be given the opportunity to amend. *Peek v. Equip. Serv. Co. of San Antonio*, 779 S.W.2d 802, 805 (Tex.1989). Summary judgment based on a pleading deficiency may be proper if the deficiency is one that could not be cured by amendment. *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex.1998). "Summary judgment is proper where the plaintiff's allegations cannot constitute a cause of action as a matter of law." *Bradt v. West*, 892 S.W.2d 56, 65 (Tex.App.-Houston [1st Dist.] 1994, writ denied) (citing *Cockrell v. Republic Mortgage Ins. Co.*, 817 S.W.2d 106, 116 (Tex.App.-Dallas 1991, no writ)). Thus, to the extent the McShane parties' motion asserted that Lougay's pleadings failed to state causes of action, the trial court could nevertheless properly grant summary judgment if Lougay's petition affirmatively demonstrated that no cause of action exists, that her recovery is barred, or her allegations cannot constitute a cause of action as a matter of law.

2. *The McShane Parties' Motion for Summary Judgment*

Lougay did not controvert the evidence that at all times relevant to Lougay's petition the McShane parties were acting as Ed's attorneys in the divorce action, and Lougay admits in her brief that the McShane parties were Ed's attorneys. Thus it is undisputed that all of Lougay's complaints against the McShane parties involve actions allegedly taken by them during the course of their representation of Ed.

 Texas law has long recognized that attorneys representing clients, may " 'practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages.' " *White*, 32 S.W.3d at 275 (quoting *Kruegel v. Murphy*, 126 S.W.

343, 345 (Tex.Civ.App.-Dallas 1910, writ ref'd)). The public has an important interest in "loyal, faithful and aggressive representation by the legal profession." *Bradt*, 892 S.W.2d at 71 (quoting *Maynard v. Caballero*, 752 S.W.2d 719, 721 (Tex.App.-El Paso 1988, writ denied)). Attorneys are charged with the duty of zealously representing their clients within the bounds of the law. *Id.* In fulfilling his duties to his client, an attorney "has the right to interpose any defense and take advantage of any legal right on the client's behalf that he deems necessary and proper, without being subjected to liability or damages." *Malone v. Abraham, Watkins, Nichols & Friend*, No. 01–99–01192–CV, —— S.W.3d ——, ——, 2002 WL 1722337 at *5 (Tex.App.-Houston [1st Dist.] July 24, 2002, no pet. h.) (citing *Bradt*, 892 S.W.2d at 71–72.). Any other rule

> would act as a severe and crippling deterrent to the ends of justice for the reason that a litigant might be denied a full development of his case if his attorney were subject to the threat of liability for defending his client's position to the best and fullest extent allowed by law, and availing his client of all rights to which he is entitled.

*Morris v. Bailey*, 398 S.W.2d 946, 947–48 (Tex.Civ.App.-Austin 1966, writ ref'd n.r.e.).

Based on these principles, the court in *Bradt* held "that an attorney does not have a right of recovery, *under any cause of action*, against another attorney arising from conduct the second attorney engaged in as part of the discharge of his duties in representing a party in a lawsuit in which the first attorney also represented a party." *Bradt*, 892 S.W.2d at 71–72 (emphasis added).

Other courts have recognized that the policies behind these principles apply with equal force to the liability of an attorney to the opposing party. *Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 288 (Tex.App.-Fort Worth 1997, writ denied); *see also Taco Bell Corp. v. Cracken*, 939 F.Supp. 528, 532 (N.D.Tex.1996); *White*, 32 S.W.3d at 276; *Mitchell v. Chapman*, 10 S.W.3d 810, 812 (Tex.App.-Dallas 2000, pet. denied). The policies behind these principles are sound and vital to our adversary system of justice. "An attorney should not go into court knowing that he may be sued by the other side[ ] for something he does in the course of representing his client; such a policy would favor *tentative* representation, not the *zealous* representation that our profession rightly regards as an ideal and that the public has a right to expect." *Bradt*, 892 S.W.2d at 72 (emphasis original). If an attorney could be held liable for statements made, or actions taken, in the course of representing his client, he would be forced to balance his own potential exposure against his client's best interest. *Malone*, —— S.W.3d at ——, 2002 WL 1722337 at *5.

Accordingly, attorneys are generally not liable to an opposing party for their conduct in representing their clients, even if that conduct is wrongful in the context of the underlying lawsuit. *Renfroe*, 947 S.W.2d at 288 ("Under Texas law, attorneys cannot be held liable for wrongful litigation conduct."). This rule focuses on the type of conduct the attorneys were engaged in, not on whether the attorneys' conduct was meritorious in the context of the underlying lawsuit. *White*, 32 S.W.3d at 276; *Renfroe*, 947 S.W.2d at 288. For example, there is no right of recovery against an attorney for filing motions in a lawsuit, even if they were frivolous or without merit, "because making motions is conduct an attorney engages in as part of the discharge of his duties in representing a party in a lawsuit." *Bradt*, 892 S.W.2d at 72. Thus, an attorney's

conduct, even if frivolous or without merit, is not actionable as long as the conduct was part of the discharge of the lawyer's duties in representing his or her client. *Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 441 (Tex. App.-Houston [14th Dist.] 2000, pet. denied). An attorney's misconduct in litigation gives rise to remedies other than a separate action seeking damages from the attorney, which remedies are properly administered in the case in which the misconduct occurred. *See, e.g.*, Tex.R. Civ. P. 13 (court may sanction attorney for filing improper pleadings, motions, and "other papers"); Tex.R. Civ. P. 215 (court may sanction attorney for abuse of discovery); Tex. Gov't Code Ann. § 22.002 (Vernon 1988) (court's power to punish for contempt of court).

A lawyer's protection from liability claims arising out of representation of a client is not without limits. When an attorney acting for his client participates in fraudulent activities, his action is "foreign to the duties of an attorney." *Poole v. Houston & T.C. Ry. Co.*, 58 Tex. 134, 137 (1882) (fraudulent assignment of bill of lading); *Likover v. Sunflower Terrace II Ltd.*, 696 S.W.2d 468, 472 (Tex.App.-Houston [1st Dist.] 1985, no writ) (conspiracy to defraud purchaser of apartment complex); *see also Querner v. Rindfuss*, 966 S.W.2d 661, 666 (Tex.App.-San Antonio 1998, pet. denied) (fraud in connection with probate administration). Thus an attorney is liable if he knowingly commits a fraudulent act that injures a third person or knowingly enters into a conspiracy to defraud a third person. *Likover*, 696 S.W.2d at 472.

Lougay's live petition, her third amended petition, affirmatively demonstrated that all of her claims against the McShane parties arose from their representation of Ed, and thus affirmatively demonstrated that she had no viable claims against the McShane parties unless those claims amount to assertions of fraud or conspiracy to defraud. To state a claim for fraud, a plaintiff must allege: (1) the defendants made a material representation that was false; (2) they knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) intended to induce plaintiff to act upon the representation; and (4) plaintiff actually and justifiably relied upon the representation and thereby suffered injury. *See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex.2001).

On appeal, Lougay does not argue that her pleadings stated a fraud cause of action against the McShane parties. She merely refers to the "numerous improper actions, proceedings and orders" which allegedly led to her loss of the house and her damages. She cites *Likover* and *Querner* as exceptions to the McShane parties argument that attorneys have absolute immunity for actions taken during representation of a client.

We agree that attorneys can be held liable for fraudulent conduct, but Lougay did not expressly allege a fraud cause of action against the McShane parties. We construe pleadings liberally in favor of the pleader when special exceptions have not been filed, but even under this policy, Lougay did not plead a cause of action for fraud against the McShane parties. *See Bradt*, 892 S.W.2d at 75. " 'Liberal' does not mean 'far-fetched;' the policy does not allow us to read into a petition a cause of action that was plainly omitted." *Id.* Further, the absence of special exceptions cannot add to the plaintiff's petition, as "[t]here is no duty to file special exceptions that in effect ask a plaintiff whether he wants to add a cause of action that he left out to the one(s) he has already pled." *Id.* Therefore, the allegations of Lougay's

third amended petition[5] cannot be construed as raising a fraud cause of action against the McShane parties.

Of the claims Lougay expressly raised against the McShane parties, the claims for negligence, "wrongful deprivation and destruction of homestead rights and eviction," tortious interference with contract, "abuse of litigation, litigation process and process," intentional infliction of emotional distress, and invasion of privacy do not assert fraudulent conduct. Consequently, the McShane parties cannot be liable to Lougay, and the trial court did not err in granting summary judgment, on these claims. *See Bradt,* 892 S.W.2d at 71–72.

■■■■ Similarly, the trial court properly granted summary judgment for the McShane parties on Lougay's constructive fraud claim. Constructive fraud is the breach of a legal or equitable duty that one party owes to another. *Archer v. Griffith,* 390 S.W.2d 735, 740 (Tex.1964). However, an attorney deals at arms' length with parties adverse to his client, owes them no duty, and is not liable to them for his actions as an attorney on behalf of his client. *Morris,* 398 S.W.2d at 947. Further, "an attorney owes a duty of care only to his or her client, not to third parties who may have been damaged by the attorney's negligent representation of his client." *Barcelo v. Elliott,* 923 S.W.2d 575, 577 (Tex.1996); *see Thompson v. Vinson & Elkins,* 859 S.W.2d 617, 623–24 (Tex.App.-Houston [1st Dist.] 1993, writ denied) (affirming summary judgment on negligence and breach of fiduciary duty claims against law firm because no duty as matter of law to a non-client). Lougay's pleadings and the summary judgment evidence conclusively show the McShane parties owed no

duty to Lougay. Thus the trial court did not err by granting summary judgment on Lougay's claim for constructive fraud. *See Gillum v. Republic Health Corp.,* 778 S.W.2d 558, 571 (Tex.App.-Dallas 1989, no writ) (summary judgment proper on constructive fraud claim because as a matter of law the defendant owed no duty to the plaintiff).

■■■ However, Lougay's claims for aiding and abetting a breach of fiduciary duty and for conspiracy could arguably involve fraudulent conduct. *See Querner,* 966 S.W.2d at 670 (fact issue whether attorney converted estate assets through conspiracy with executor, his client). Lougay alleged the McShane parties aided and abetted Pape in breaching his fiduciary duties as a receiver. In their motion for summary judgment, the McShane parties never specifically addressed this claim, other than to argue that an attorney is not liable to an adverse party under any cause of action for actions as an attorney representing his client. As this argument does not, as a matter of law, defeat a claim based on or involving fraudulent conduct, the McShane parties did not show as a matter of law that they were not liable on Lougay's claim that they aided and abetted a breach of a fiduciary duty by Pape. *See Likover,* 696 S.W.2d at 472; *see also Querner,* 966 S.W.2d at 666. Thus the trial court erred by granting summary judgment on Lougay's aiding and abetting a breach of a fiduciary duty claim against the McShane parties. We express no opinion on the merit of this claim, particularly in light of the unchallenged summary judgment granted in favor of Pape on Lougay's

---

**5.** The only alleged misrepresentation is Lougay's allegation that Ed, with the assistance of the McShane parties, falsely stated in his Statement of Financial Affairs and Schedules to the bankruptcy court that he made the mortgage payments for December 1994, and January and February 1995.

claims against him for breach of fiduciary duty.[6]

The McShane parties assert that Lougay's conspiracy claim fails because all of her other claims failed as a matter of law; therefore, no tort remains to support a claim for civil conspiracy. Civil conspiracy is the combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means. *Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex.1996). Liability for civil conspiracy depends on participation in an underlying tort for which the plaintiff seeks to hold at least one of the defendants liable. *Id.* The McShane parties' motion for summary judgment only addressed the alleged underlying tort claims against *them.* The McShane parties did not establish by their summary judgment motion or evidence that Lougay had no underlying tort claims against Ed, their alleged co-conspirator. Thus, they did not negate an essential element of the civil conspiracy claim and the trial court erred in granting summary judgment on Lougay's civil conspiracy claim against the McShane parties.

Therefore, we resolve Lougay's first and second issues in her favor in her appeal of the judgment on her causes of action against the McShane parties for aiding and abetting a breach of fiduciary duty and for civil conspiracy. We resolve those issues against her on all other causes of action against the McShane parties. We reverse the trial court's judgment on Lougay's claims for aiding and abetting a breach of fiduciary duty and civil conspiracy against the McShane parties and remand those claims to the trial court for further pro-

ceedings. We affirm the trial court's judgment on all of Lougay's claims against the McShane parties in all other respects.

## ED'S FIRST MOTION FOR SUMMARY JUDGMENT

In two issues, Lougay argues the trial court erred by granting Ed's first motion for summary judgment without allowing her an opportunity to replead in response to the motion and committed "numerous errors" in granting Ed's first motion for summary judgment. We examine these two issues in the context of Lougay's alleged causes of action.

Ed argues on appeal that all of Lougay's causes of action are barred by collateral estoppel arising from the final divorce decree. However, Ed did not raise this ground in his motions for summary judgment. He only raised collateral estoppel against Lougay's claims for constructive fraud, breach of fiduciary duty, and intentional infliction of emotional distress. In his second amended motion for summary judgment, Ed argued the final divorce decree was res judicata only as to her claim for intentional infliction of emotional distress. Ed's motions for summary judgment must stand or fall on the express grounds raised in the motion. *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 340–41 (Tex.1993). Therefore, we will not consider whether collateral estoppel and res judicata bar *all* of Lougay's claims, but only whether they bar the specific claims Ed addressed in his motions for summary judgment.

1. *Wrongful Deprivation and Destruction of Homestead Rights and Eviction*

---

**6.** *Cf. Ernst & Young,* 51 S.W.3d at 583 (failure of a claim for fraud necessarily defeated dependent conspiracy and aiding and abetting claims); *Kline v. O'Quinn,* 874 S.W.2d 776, 786–87 (Tex.App.-Houston [14th Dist.] 1994, writ denied) (absence of fiduciary duty between plaintiff and third party defeated aiding and abetting breach of fiduciary duty claim against defendant).

In his first amended motion for summary judgment, Ed argued Lougay's claim of "wrongful deprivation and destruction of homestead rights and eviction" was not a recognized cause of action[7] and was barred because it is a collateral attack on the orders of the divorce court. Lougay did not respond to Ed's collateral attack argument in either her response to the motion for summary judgment or in her original brief to this Court. Ed's appellate brief to this Court argues "it was not error for the trial court to proceed to summary judgment on claims that constitute an impermissible collateral attack on the judgment of another court." In her reply brief, Lougay does not deny that she is collaterally attacking the divorce court's orders regarding the sale of the house. Rather, she argues that the orders of the divorce court contained many "deficiencies" and fail to show jurisdiction, rendering them void.

 A collateral attack is an attempt to avoid the binding force of a judgment in a separate proceeding brought for some other purpose. *Ramsey v. Ramsey*, 19 S.W.3d 548, 552 (Tex.App.-Austin 2000, no pet.). A judgment of a court of general jurisdiction is not subject to collateral attack in a court of equal jurisdiction unless the judgment is void. *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex.1985). A judgment is void only if the court had no jurisdiction over the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court. *Id.* All other errors make the judgment merely voidable, and may only be corrected through a direct attack. *Id.*

 When reviewing a collateral attack, we presume the validity of the judgment under attack. *Ramsey*, 19 S.W.3d at 552. Extrinsic evidence may not be used to establish a lack of jurisdiction when collaterally attacking a judgment. *Holloway v. Starnes*, 840 S.W.2d 14, 18 (Tex. App.-Dallas 1992, writ denied). A collateral attack fails if the judgment contains jurisdictional recitals, even if other parts of the record show a lack of jurisdiction. *Id.* Here, the judgment under attack is the final decree of divorce of the divorce court, which was attached as an exhibit to Ed's original motion for summary judgment. All prior interlocutory orders of the divorce court were merged into and subsumed by the final judgment. *See Webb v. Jorns*, 488 S.W.2d 407, 408–09 (Tex.1972). The final decree of divorce contains the following recitation:

> The Court finds that the pleadings of H. EDWARD TOLES, III are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, *finds that it has jurisdiction over this cause of action and the parties* and that at least sixty days have elapsed since the date the suit was filed. The Court finds that H. EDWARD TOLES, III has been a domiciliary of this state for at least a six-month period preceding the filing of this action and a resident of Dallas County, Texas, for at least a ninety-day period preceding the filing of this action. The Court finds that all persons entitled to citation were properly cited. (Emphasis added.)

Substantially similar language has been found sufficient to establish the jurisdictional basis for a valid judgment. *See Ramsey* 19 S.W.3d at 553. Likewise, we conclude the divorce decree in the present

---

**7.** Neither of the parties has cited any authority for the existence or essential elements of this alleged cause of action. Because of our disposition of this issue, we express no opinion on whether such a cause of action exists or is recognized by Texas law.

case is not void and may not be collaterally attacked.

Lougay's arguments also fail to the extent they attack the preliminary or intermediate orders of the divorce court. The divorce court had jurisdiction over the parties and over the subject matter of the divorce case. As a part of the exercise of that jurisdiction, the trial court had the power to enter necessary orders. TEX. GOV'T CODE ANN. § 21.001(a) (Vernon Supp. 2002). According to her petition, Lougay herself invoked the jurisdiction of the divorce court to enjoin Guaranty Federal from foreclosing on the homestead and to request the appointment of a receiver. Because the divorce court's orders are not void for lack of jurisdiction, they are not now subject to collateral attack.

In her reply brief, Lougay raises several "deficiencies" in the divorce court's orders appointing the receiver and approving the sale of the house. These deficiencies do not challenge the divorce court's jurisdiction over the parties or the subject matter, but the court's exercise of that jurisdiction. Such alleged deficiencies would at most have rendered the orders voidable, not void, and could properly be raised in a direct attack on appeal of the final divorce decree or a permissible interlocutory appeal. Lougay could have, but did not, take an interlocutory appeal of the order appointing the receiver. See TEX. CIV. PRAC. & REM.CODE ANN. § 54.014(a)(2) (Vernon Supp.2003); TEX. FAM.CODE ANN. § 6.507 (Vernon 1998). Lougay did appeal portions of the final divorce decree, but she chose not to appeal any of the divorce court's decisions relating to the sale of the house. She may not now attack those decisions in a collateral proceeding.

Because Lougay's petition affirmatively demonstrates that her claims for "wrongful deprivation of homestead rights and eviction" are impermissible collateral attacks on the divorce judgment, the trial court did not err by failing to give Lougay the opportunity to amend her pleadings prior to granting Ed's motion for summary judgment as to those claims. We resolve Lougay's first issue against her on this claim against Ed. See Peek, 779 S.W.2d at 805.

2. *Abuse of Litigation and Abuse of Litigation Process*

 Ed moved for summary judgment on the "abuse of litigation and litigation process" claims on the ground that the causes of action are not recognized by Texas law. Lougay objected to Ed's first amended motion for summary judgment on the grounds that it represented a special exception disguised as a motion for summary judgment. The trial court overruled Lougay's objection in the order granting summary judgment. Lougay's objection sufficiently brought her complaint to the trial court's attention and the trial court made a ruling on the objection. Therefore, the issue is preserved for consideration by this Court. See TEX.R.APP. P. 33.1.

 Under this section of her pleading, Lougay makes general allegations of improper litigation tactics, wrongful injunction, wrongful receivership, abuse of injunction process, abuse of receivership, deprivation of constitutional rights, and denial of substantive and procedural due process, denial of due course of law, denial of free and open access to the courts, and denial of property rights without adequate compensation and without due process. Although these allegations are vague and general, Lougay's petition does not affirmatively demonstrate that these claims admit of no cause of action or that her recovery under any such cause of action is barred. Thus, Ed was required to specially except to these allegations and give

Lougay an opportunity to amend before he could obtain summary judgment on the grounds that no such causes of action exist. See *Wilkinson*, 54 S.W.3d at 12. Thus the trial court erred by granting summary judgment on these claims without first providing Lougay the opportunity to amend her pleadings. *Peek*, 779 S.W.2d at 805. Lougay's first issue is sustained to the extent it applies to her allegations of "abuse of litigation and litigation process." We reverse and remand to the trial court Lougay's claims of abuse of litigation and abuse of litigation process. In doing so we express no opinion on the validity or applicability of any or all of these alleged claims to the facts of this case.

### 3. *Abuse of Process*

Ed argues in his first amended motion for summary judgment that Lougay "has not pled that [Ed] made an illegal, improper or perverted use of any process" and that "[u]nder the facts pled, [Lougay] cannot establish at least one element of this cause of action." Ed relied solely on the facts pled in Lougay's petition. Lougay argued in her response to Ed's amended motion for summary judgment that the summary judgment motion amounted to a special exception. The trial court overruled her objections in the order granting the motion for summary judgment.

■ Ed did not give Lougay the opportunity to amend her pleadings by filing special exceptions. He may not now argue that summary judgment was proper because Lougay's pleadings are defective. Again Lougay's petition, although vague and general, does not affirmatively demonstrate no cause of action exists for abuse of process or that her recovery is barred. Ed's arguments are the proper subject of special exceptions. The trial court erred by granting summary judgment on Lougay's abuse of process claim without first providing her the opportunity to amend.

*Peek*, 779 S.W.2d at 805. Lougay's first issue is sustained to the extent it applies to her allegation of abuse of process. We reverse and remand to the trial court for further consideration of Lougay's claim of abuse of process.

### 4. *Constructive Fraud*

Ed argued in his first amended motion for summary judgment that Lougay could not assert a cause of action for constructive fraud against him outside of the divorce proceedings. He argued he owed no duty to Lougay once divorce proceedings were instituted and the parties had hired attorneys. Lougay argues the trial court should not have granted summary judgment to Ed on her constructive fraud claims because he has failed to disprove at least one element of constructive fraud.

■ Constructive fraud refers to the breach of a legal or equitable duty violating a fiduciary relationship. *Jackson v. Smith*, 703 S.W.2d 791, 795 (Tex.App.-Dallas 1985, no writ). A fiduciary duty exists between spouses. *Id.* However, that relationship terminates in a contested divorce when a husband and wife each have independent attorneys. *Parker v. Parker*, 897 S.W.2d 918, 924 (Tex.App.-Fort Worth 1995, writ denied), *overruled on other grounds by Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41 (Tex.1998). In the divorce context, a claim for a breach of fiduciary duty is the same as a claim for fraud on the community. *In re Marriage of Moore*, 890 S.W.2d 821, 827 (Tex.App.-Amarillo 1994, no writ). A claim of fraud on the community may seek to recover specific property wrongfully conveyed. *Belz v. Belz*, 667 S.W.2d 240, 246 (Tex.App.-Dallas 1984, writ ref'd n.r.e.). A judgment for fraud on the community may not stand apart from the divorce court's division of the community estate. *Id.* at 247. Rather, fraud on

the community is a factor the divorce court may consider in its division of the estate that may justify an unequal division of the property. *Id.*

▆▆▆ Here, all of Lougay's allegations of Ed's constructive fraud and breach of fiduciary duty arose in the context of hotly contested divorce proceedings, in which Ed and Lougay were each represented by independent attorneys. Ed did not owe Lougay a legal or equitable duty in the conduct of those proceedings that would support a claim for constructive fraud. *See Parker,* 897 S.W.2d at 924. Her complaints should have been brought in the divorce proceedings where the divorce court could have considered them as a factor in dividing the community property between Ed and Lougay. Lougay may not now seek damages for Ed's constructive fraud independent from the divorce action.

Lougay's pleadings affirmatively show that her claims of constructive fraud, like her claim for "wrongful deprivation of homestead rights and eviction," are barred. Therefore, the trial court did not err by granting summary judgment on Lougay's constructive fraud claim.

### 5. Aiding and Abetting Breach of Fiduciary Duties

Lougay alleged in her petition that Ed "participated in or aided and abetted" Pape in the breach of his fiduciary duties owed to Lougay. In his first amended motion for summary judgment, Ed did not specifically address this cause of action, apparently assuming Lougay alleged Ed breached his own fiduciary duty to her. Ed raised the following grounds for dismissing Lougay's breach of fiduciary duty claim against him: 1) he owed no fiduciary duty to Lougay; 2) the claim may not be brought outside of the divorce action; and

3) Lougay is collaterally estopped from bringing this claim.

▆▆▆ On appeal, Lougay argues she did not allege Ed breached his fiduciary duties, but that Pape breached his fiduciary duties as receiver and Ed participated or aided and abetted that breach. She argues that Ed failed to address this cause of action in his motion and the summary judgment was improper. We agree. Lougay's third amended petition alleged a claim against Ed for aiding and abetting the alleged breach of fiduciary duty by Pape. We note that after the trial court granted summary judgment in favor of Ed, it granted summary judgment in favor of Pape on all of Lougay's claims against him, including the breach of fiduciary duty claim. The fiduciary's breach of duty is a necessary element of an aiding and abetting a breach of fiduciary duty claim against another.[8] However, because Ed did not address the aiding and abetting claim in his motion for summary judgment, the trial court erred in granting summary judgment on this claim. *See Stiles v. Resolution Trust Corp.,* 867 S.W.2d 24, 26 (Tex.1993).

### 6. Negligence

▆▆▆ Ed argued in his amended motion for summary judgment that Lougay is "precluded as a matter of law from prevailing on her 'negligence' theory because the facts she has plead [sic] indicate that she is actually attempting to recover on the theory of breach of fiduciary duty or constructive fraud under the guise of negligence." Lougay's response argued this was merely an improper special exception to her pleading and that Ed had not disproved at least one element of the cause of action. On appeal, Lougay raises several arguments about the duties of a court appointed receiver in her argument under the negli-

---

**8.** *See* footnote 6, *supra.*

gence issue. It is unclear how these arguments apply to Lougay's alleged cause of action against Ed, who was not the receiver, but we need not address them further because Lougay did not raise these arguments in her response to the motion for summary judgment below. *See* Tex.R. Civ. P. 166a(c).

It is fundamental that a legal duty must exist before a defendant is held liable for negligence. *Reeder v. Daniel,* 61 S.W.3d 359, 364 (Tex.2001). Whether a duty exists under a given set of facts is a question of law. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex. 1990). All of Lougay's factual allegations supporting her negligence claim arise out of actions or inactions taken in connection with the divorce proceeding. Her allegation of a negligence cause of action arising out of conduct in the divorce proceeding assumes Ed owed her a duty of care in the divorce proceeding. Ed moved for summary judgment on the ground that the negligence claim was barred for the same reasons as the breach of fiduciary duty and constructive fraud claims, which included the argument that Ed owed no duty to Lougay once the divorce proceeding was filed. Thus, Ed argued he owed no duty of care to Lougay, an opposing party, in the divorce proceeding.

We conclude no duty of care existed between Ed and Lougay, who were opposing parties in litigation. Such a duty would be inconsistent with our adversarial system and the supreme court's reasons for refusing to recognize an independent tort for spoliation in *Trevino.* Such a duty of care (like an independent cause of action for spoliation, perjury, or embracery) would involve improper conduct by a party or a witness within the context of an underlying lawsuit. *See Trevino,* 969 S.W.2d at 953. Courts have rejected such claims for important policy reasons includ-

ing "ensuring the finality of judgments, avoiding duplicative litigation, and recognizing the difficulty in calculating damages." *Id.* We agree that recognizing an independent duty of care between opposing parties in litigation, especially a hotly contested divorce proceeding, "would create an impermissible layering of liability and would allow a [party] to collaterally attack an unfavorable judgment with a different factfinder at a later time, in direct opposition to the sound policy of ensuring the finality of judgments." *Id.* Remedies for improper litigation conduct are best handled within the context of the lawsuit in which the conduct occurs through the use of sanctions and other procedures. *Id.; see also* Tex. Civ. Prac. & Rem.Code Ann. Ch. 10 (Sanctions for Frivolous Pleadings and Motions), Ch. 11 (Vexatious Litigants); Tex.R. Civ. P. 13.

We conclude the summary judgment evidence and Lougay's petition established as a matter of law that Ed as an opposing party in contested litigation, did not owe Lougay a duty of care in the divorce proceeding. Therefore, the trial court did not err by granting summary judgment on the negligence cause of action against Ed.

### 7. *Breach of Contract*

In her third amended petition, Lougay complains Ed failed to fulfill his obligations under certain agreed orders signed by the parties or their attorneys and by the divorce court. For example, she contends Ed, in violation of the agreed orders, purchased stock, failed to pay mortgage payments, failed to pay maintenance and repair costs to their marital home, and failed to oppose the sale of the home. In his motion for summary judgment, Ed did not argue that the agreed temporary orders did not constitute a contract between the parties. Rather, he argued that the orders contemplated further modification by the divorce court and, therefore, his seek-

ing the divorce court's modification of those orders cannot be a breach of contract.

Ed did request that certain portions of the agreed temporary orders be modified by the divorce court, as evidenced by the divorce court's order of December 20, 1994. That order relieved Ed of his obligation to pay monthly support to Lougay and authorized certain distributions, including late mortgage payments, from the parties' joint bank account. Although that order does modify some of the provisions of the agreed temporary orders, it did not relieve Ed of all his duties under the agreed temporary orders.

■ The December 20 order specifically provided that "the provisions of all prior orders of this Court which are not modified by this order, shall remain in full force and effect during the pendency of this suit or until modified by order of this Court." No other orders of the divorce court modified several of Ed's obligations, including his obligation to notify Lougay of purchases or sales of stocks, to make the mortgage payments, or to pay repair and maintenance costs of the home. Therefore, a genuine issue of material fact exists as to whether Ed breached a contract by failing to comply with the agreed orders of the divorce court. The trial court erred by granting summary judgment on Lougay's breach of contract claims. Lougay's second point of error is sustained to the extent it complains of the trial court granting summary judgment on her breach of contract claim against Ed.[9]

8. *Invasion of Privacy*

In her third amended petition, Lougay argues Ed, Pape, and the McShane parties invaded her privacy with regard to docu-

ments and papers placed in storage under Ed's name. In his first amended motion for summary judgment, Ed argues Lougay's claim must fail for two reasons. First, Ed argues the actions complained of in the third amended petition were not highly offensive as a matter of law. He does not argue that the pleadings affirmatively show no cause of action exists or that Lougay's recovery is barred. Because Ed did not specially except to Lougay's pleadings, and the record does not affirmatively show no cause of action exists or that her recovery is barred, the trial court could not have properly granted summary judgment on this ground. *See Peek,* 779 S.W.2d at 805.

Second, Ed argues that Lougay's failure to remove her belongings from the house by the deadline ordered by the divorce court amounted to implied consent to have her property removed from the house and stored. In support of this proposition, Ed cites *Jennings v. Minco Technology Labs, Inc.,* 765 S.W.2d 497 (Tex.App.-Austin 1989, writ denied). *Jennings* determined that an employer's drug testing program would not violate the employee's privacy because the test would only be conducted if the employee gave express written consent. *Id.* at 500–02. *Jennings* does not support Ed's argument that implied consent is sufficient to defeat a claim for invasion of privacy.

■ However, even assuming Ed has a defense, there is a material fact issue as to whether Lougay impliedly consented to the removal of her belongings. Lougay pled that, on May 29, 1996 ex parte, after court hours, and at the trial judge's home—the trial judge signed the emergency order requiring Lougay to remove her

---

9. Ed argued in his brief before this Court that Lougay's remedy for any breach of contract is found in § 6.506 of the family code. However-

er, this argument was not before the trial court and will not be considered here. *See McConnell,* 858 S.W.2d at 340–41.

belongings by the next morning at 10:00 a.m. It is not clear whether Lougay had time to pack if she chose to do so after the trial court signed the order and before the movers came the next morning. Additionally, Lougay maintains in her petition and on appeal that she did not consent to the removal of her belongings. Indulging every reasonable inference in Lougay's favor, we conclude Ed has not shown that Lougay consented to the removal of her belongings as a matter of law. We sustain Lougay's first point of error to the extent it complains of the trial court's decision to grant summary judgment on her invasion of privacy claims without first requiring Ed to specially except. We sustain Lougay's second point of error to the extent it complains the trial judge erred by granting summary judgment on her claim of invasion of privacy based on the defense of consent.

### 9. Civil Conspiracy

Ed argues Lougay's claims for civil conspiracy must fail as a matter of law because the trial court properly granted summary judgment on all of her causes of action and, therefore, there are no underlying torts to support the derivative tort of civil conspiracy. However, because we have found the trial court erred by granting summary judgment on Lougay's claims for "abuse of litigation and litigation process," abuse of process, aiding and abetting a breach of fiduciary duty, and invasion of privacy, we conclude the trial court also erred by granting summary judgment on Lougay's civil conspiracy claim. *See Tilton*, 925 S.W.2d at 681.

### ED'S SECOND MOTION FOR SUMMARY JUDGMENT

On July 18, 1997, Ed filed an answer to Lougay's third amended petition alleging several affirmative defenses, including res judicata and collateral estoppel. On July 29, 1997, Ed filed his second motion for summary judgment arguing summary judgment was proper on the claims of spoliation of evidence and intentional infliction of emotional distress.[10] Lougay did not object that Ed's second motion for summary judgment was an attempt to circumvent the special exceptions procedure. The trial court granted Ed's second motion for summary judgment on September 8, 1997. In her third issue, Lougay argues the trial court erred by granting Ed's second motion for summary judgment.

### 1. Spoliation of Evidence

Lougay does not dispute that she has no cause of action for spoliation of evidence after the supreme court's decision in *Trevino v. Ortega*, 969 S.W.2d 950, 952 (Tex. 1998). Accordingly, we affirm the trial court's decision to grant summary judgment on her spoliation claims.

### 2. Intentional Infliction of Emotional Distress

In her third amended petition, Lougay claims Ed committed intentional infliction of emotional distress by depriving her of her homestead and by moving her belongings into storage. Ed argues summary judgment is proper because the actions complained of were not extreme and outrageous as a matter of law. We agree.

The elements of a claim for intentional infliction of emotional distress are: 1) the defendant acted intentionally and recklessly; 2) the conduct of the defendant was extreme and outrageous; 3) the conduct caused the plaintiff emotional distress; 4) the emotional distress was severe. *Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex.1993). Initially, courts must make a threshold determination of whether the defendant's conduct is so extreme and outra-

---

10. Although Ed argued res judicata and collateral estoppel as grounds for summary judg-

ment, he does not argue these affirmative defenses on appeal.

geous as to permit recovery. *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216–17 (Tex.2000). If reasonable minds may differ on whether the conduct of the defendant may be regarded as extreme and outrageous, a jury should decide if the conduct is sufficiently extreme and outrageous to hold the defendant liable. *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 616 (Tex.1999). In order to qualify as extreme and outrageous, the defendant's conduct must go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community. *Id.* at 611. It is not sufficient that "the defendant has acted with an intent that is tortious, malicious, or even criminal, or that he has intended to inflict emotional distress." *Id.* at 616. While the defendant's intent is relevant, the conduct itself must be extreme and outrageous. *Id.*

Lougay alleges Ed committed extreme and outrageous conduct by defaulting under the agreed orders of the divorce court, pursuing the sale of her homestead, "aiding and abetting" her eviction and the removal of her belongings from the residence, placing his alleged girlfriend's name on the storage unit leases, and by removing some of Lougay's documents and papers from storage without her consent. Ed argues he was complying with the orders of the divorce court and that his affidavit submitted as summary judgment evidence establishes he did not remove any of Lougay's documents or papers from the storage facility.

When considering the summary judgment evidence, we take all evidence favorable to Lougay as true and indulge every reasonable inference in her favor. *See Nixon*, 690 S.W.2d at 548–49. Even so, Ed has brought forth sufficient evidence to negate the element of extreme and outrageous conduct. The evidence shows the divorce court ordered Ed to pay packers and movers to pack Lougay's belongings and move them into storage if she had not done so herself by May 30, 1996 at 10:00 a.m. Ed's compliance with that order does not amount to a tort. The other bases pled by Lougay as grounds for intentional infliction of emotional distress, even indulging every reasonable inference in her favor, do not meet the threshold requirement that the conduct be extreme and outrageous. While defaulting under agreed court orders and taking documents and papers belonging to one's spouse are not to be condoned, these actions, under this set of facts, do not amount to extreme and outrageous conduct.

Once Ed established a right to summary judgment as a matter of law, the burden then shifted to Lougay to present evidence raising a genuine issue of material fact to preclude summary judgment. *See Gen. Mills Rests.*, 12 S.W.3d at 832. Lougay has not raised a fact question as to whether Ed's actions were extreme and outrageous. We affirm the trial court's decision to grant Ed's second motion for summary judgment.

## CONCLUSION

We resolve Lougay's first and second issues in her favor in her appeal against the McShane parties on the causes of action for aiding and abetting a breach of fiduciary duty and civil conspiracy. We resolve those issues against her on all other causes of action.

We resolve Lougay's first issue in her favor with respect to her claims for "abuse of litigation and litigation process," abuse of process, and invasion of privacy against Ed. We resolve Lougay's second issue in her favor with respect to her claims against Ed for breach of contract, aiding and abetting a breach of fiduciary duty, and civil conspiracy.

Nonetheless, we resolve Lougay's first and second issues against her as to her

claims for "wrongful deprivation and destruction of homestead rights and eviction," negligence, and constructive fraud against Ed. Furthermore, we resolve Lougay's third issue against her as to both the spoliation of evidence claim and the intentional infliction of emotional distress claim against Ed.

We reverse the trial court's judgment on Lougay's claims for aiding and abetting a breach of fiduciary duty and civil conspiracy against the McShane parties and remand those claims to the trial court for further proceedings. We reverse the trial court's judgment as to Lougay's claims for "abuse of litigation and litigation process," abuse of process, invasion of privacy, aiding and abetting a breach of fiduciary duty, civil conspiracy, and breach of contract against Ed and remand those claims for further proceedings. We affirm the remainder of the trial court's judgment.