Affirmed in Part, Reversed and Remanded in Part, and Opinion filed June
21, 2005









Affirmed in Part, Reversed and Remanded in Part, and
Opinion filed June 21, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00980-CV

____________

 

SAN SABA
ENERGY, L.P., R.L. ZINN, LTD., GILBERT GOLDSTEIN, 

NANZIN AND FAMILY LIMITED PARTNERSHIP, Appellants

 

V.

 

MARSHALL
H. CRAWFORD, II D/B/A PURSUIT EXPLORATION COMPANY, Appellee

________________________________________________________________________

 

On Appeal from the 113th District Court

Harris County, Texas

Trial Court Cause No. 00-31568

________________________________________________________________________

 

O P I N I O N








This case involves various claims
by appellants/plaintiffs San Saba Energy, L.P., R.L. Zinn. Ltd., Gilbert
Goldstein, and Nanzin Family Limited Partnership (hereinafter collectively AInterest
Owners@) against
their fellow working interest owner in certain oil and gas leases, appellee/defendant
Marshall H. Crawford, II d/b/a Pursuit Exploration Company.  After Crawford moved for summary judgment on
the Interest Owners= contract
and tort claims, the trial court struck most of the Interest Owners=
summary-judgment response, sustained all of Crawford=s
objections to their summary-judgment evidence, and granted Crawford=s motion
for summary judgment.  Concluding that
the trial court erred in striking the Interest Owners=
summary-judgment response, we consider the response in evaluating the propriety
of the summary judgment.  Because we
conclude the trial court erred in granting summary judgment as to one of San
Saba=s
contract claims against Crawford under the Operating Agreement, we reverse the
trial court=s summary judgment as to that
claim, and we remand it to the trial court for further proceedings consistent
with this opinion.  We affirm the
judgment in all other respects.

I.  Factual and
Procedural Background

The Interest Owners, Crawford,
and others were working interest owners in oil and gas leases in Jim Hogg
County, Texas.  These owners entered into
an Operating Agreement dated November 5, 1997 (hereinafter AOperating
Agreement@).  The Operating Agreement created an area of
mutual interest (hereinafter AAMI@) and
required the parties thereto to immediately give written notice, with all
pertinent details and information, to the other parties upon acquiring an oil
and gas interest affecting any lands in the AMI or upon acquiring the right to
acquire any such interest.  Under the
Operating Agreement, after such notice is given, each receiving party has
either twenty days, exclusive of weekends and legal holidays, or forty-eight
hours, exclusive of weekends and legal holidays, to evidence in writing an
election to acquire a proportionate interest by paying a proportionate share of
the acquisition costs.  The twenty-day
period applies unless a well is being drilled in the AMI when the notice is
given, in which case the forty-eight-hour notice period applies.  If a receiving party fails to timely give
notice of its election, then it is deemed to have elected not to acquire.  








Crawford testified at his
deposition that by August 15, 1998, he had a deal worked out for him to buy a
term assignment of an oil and gas lease as to a tract of approximately 605
acres of land, part of which was in the AMI. 
On August 20, 1998, O=Sullivan
Oil and Gas Company, Inc. and Crawford executed this Term Assignment
(hereinafter ATerm Assignment@).  On August 24, 1998, Crawford had the Term
Assignment recorded in the official records of Jim Hogg County.  Crawford testified that on August 25, 1998,
he received a report showing that a well had been spudded in the AMI on August
24, 1998.  On Wednesday, August 26, 1998,
Crawford sent out his notice, attempting to comply with his obligations under
the Operating Agreement.  Because a well
was being drilled in the AMI when the notice was given, the Interest Owners had
forty-eight hours to give written notice of their election to acquire a
proportionate interest by paying a proportionate share of the acquisition
costs.  The Interest Owners never gave
notice of an election to acquire a proportionate interest.

Irrespective of any election to
acquire a proportionate interest in the Term Assignment, it is undisputed that
the Operating Agreement, by its own terms, provided that Blacklake, L.L.C., San
Saba=s
predecessor-in-interest, was entitled to share with Crawford an overriding
royalty interest in the lands covered by the oil and gas lease that was the
subject of the Term Assignment (hereinafter ALease@).  Crawford, however, testified that he conveyed
this interest to David and Sandra Doughtie because David Doughtie told Crawford
that Blacklake had agreed in a settlement agreement that this overriding
royalty interest should be conveyed to him. 









The Interest Owners brought suit
against Crawford and others.  They
alleged, among other things, that Crawford breached the Operating Agreement by
failing to give them immediate written notice of his right to acquire the Term
Assignment and of his acquisition of the Term Assignment and by failing to
include in his notice all pertinent details and information.  The Interest Owners allege that if Crawford
had provided timely notice, then they would have had twenty days to respond.  They also assert that if Crawford had
provided all pertinent details and information, then they would have used the
twenty-day period to investigate the Term Assignment and would have elected to
acquire a proportionate interest.  The
Interest Owners assert that as a result of this alleged breach of the Operating
Agreement, they suffered substantial damages. 
San Saba also asserts that it suffered substantial damages as a result
of Crawford=s breach of the Operating
Agreement by failing to convey to San Saba=s
predecessor-in-interest an overriding royalty interest in the lands covered by
the Lease (hereinafter AOverriding
Royalty@).  Contrary to Crawford=s
assertions, San Saba asserts that the settlement agreement in question does not
affect San Saba=s
entitlement to this Overriding Royalty.

The Interest Owners asserted the
following claims, among others, against Crawford:

!         Crawford breached his fiduciary and contractual duties
relating to a letter agreement of February 12, 1997.

!         Crawford breached the Operating Agreement by failing to give
immediate and adequate notice to the Interest Owners regarding his right to
acquire the Term Assignment and regarding his acquisition of the Term
Assignment.  Crawford=s notice was inadequate
under the Operating Agreement because it did not include all pertinent details
and information.

!         Crawford breached the Operating Agreement by failing to
convey to San Saba=s predecessor-in-interest,
Blacklake, the Overriding Royalty  to
which Blacklake was entitled under the Operating Agreement.

!         Crawford tortiously interfered with San Saba=s rights under its
settlement agreement with Doughtie and breached his fiduciary duty to  hold these interests for San Saba.  








The trial court granted Crawford
a partial summary judgment, ruling that the Interest Owners take nothing
regarding the February 12, 1997 letter agreement because it is invalid.  Crawford then filed a single instrument in
the trial court entitled ASpecial
Exceptions and Motion for Final Summary Judgment on all Remaining Claims.@  Despite this title and Crawford=s
citation to Texas Rule of Civil Procedure 91, entitled, ASpecial
Exceptions,@ this motion does not point out
with particularity any alleged defect or other insufficiency in the allegations
in the Interest Owners=
petition.  Crawford=s motion,
however, does assert the following summary-judgment grounds:

(1)       Crawford asserts various challenges
against the Interest Owners= claims based on alleged contractual and fiduciary
duties arising from the February 12, 1997 letter agreement.

(2)       There is no evidence showing that
Crawford owed the Interest Owners a fiduciary duty. 

(3)       There is no evidence of various essential
elements of any claims for tortious interference and conversion asserted by the
Interest Owners.

(4)       Crawford=s August 26, 1998 notice
to the Interest Owners was timely as a matter of law under the Operating
Agreement, and there is no evidence that this notice was untimely under the
Operating Agreement.

(5)       There is no evidence of damages to the
Interest Owners relating to Crawford=s alleged failure to give
timely notice under the Operating Agreement.

(6)       As a matter of law, Crawford=s August 26, 1998 notice
contained all pertinent information concerning the Term Assignment.  

(7)       By failing to respond to a January 27,
1999 letter from Crawford, the Interest Owners waived any interest in the
Lease, and Crawford is not obligated to convey any such interest to the
Interest Owners.

(8)       Crawford did not breach the Operating
Agreement by failing to convey the Overriding Royalty to Blacklake because
Blacklake previously had assigned this interest to David Doughtie under a
December 2, 1997 settlement agreement and because San Saba specifically agreed
to this conveyance in an assignment executed on April 13, 1999.

(9)       Because Blacklake previously had assigned
the Overriding Royalty to Doughtie, there is no evidence the Interest Owners
suffered damages as a result of Crawford=s conveyance of this
interest to Doughtie.[1]  








The Interest Owners timely filed
a twenty-four page summary-judgment response in opposition, along with excerpts
from three depositions and affidavits from Jonathan Preston and Robert Zinn.  Crawford responded by filing objections and a
motion to strike some of the Interest Owners=
summary-judgment evidence.  In this same
document, Crawford asked the trial court to strike most of the Interest Owners=
summary-judgment response.[2]  The trial court sustained all of Crawford=s
objections to the summary-judgment evidence, struck pages two through
twenty-one of the Interest Owners=
summary-judgment response, granted Crawford=s motion
for summary judgment without specifying the grounds, and ordered that the
Interest Owners take nothing against Crawford. 
After the trial court severed the Interest Owners= claims
against other defendants and after other claims were nonsuited, the trial court=s
judgment became final.  The Interest
Owners appeal, asserting the trial court erred in striking their
summary-judgment evidence and most of their summary-judgment response and in
granting summary judgment as to their claims for breach of the Operating
Agreement and their claim for fraud.

II.  Standards
of Review

In reviewing a traditional motion
for summary judgment, we take as true all evidence favorable to the nonmovant,
and we make all reasonable inferences in the nonmovant=s
favor.  Dolcefino v. Randolph, 19
S.W.3d 906, 916 (Tex. App.CHouston
[14th Dist.] 2000, pet. denied).  If the
movant=s motion
and summary-judgment evidence facially establish its right to judgment as a
matter of law, the burden shifts to the nonmovant to raise a genuine, material
fact issue sufficient to defeat summary judgment.  Id. 








In reviewing a no-evidence motion
for summary judgment, we ascertain whether the nonmovant pointed out
summary-judgment evidence of probative force to raise a genuine issue of fact
as to the essential elements attacked in the no-evidence motion.  Id.; Johnson v. Brewer & Pritchard,
P.C., 73 S.W.3d 193, 206B08 (Tex.
2002).  We take as true all evidence
favorable to the nonmovant, and we make all reasonable inferences therefrom in
the nonmovant=s favor.  Dolcefino, 19 S.W.3d at 916.  A no-evidence motion for summary judgment
must be granted if the party opposing the motion does not respond with
competent summary-judgment evidence that raises a genuine issue of material
fact.  Id. at 917.  Because the trial court did not specify the grounds for its
ruling, we will affirm if any of the grounds advanced in the motion has
merit.  See Carr v. Brasher,
776 S.W.2d 567, 569 (Tex. 1989). 

III.  Analysis

A.        Did
the trial court err in striking most of the Interest Owners= timely-filed
summary-judgment response?

As part
of their first issue, the Interest Owners assert that the trial court erred in
granting Crawford=s motion
to strike pages two through twenty-one of their twenty-four-page
summary-judgment response.  Both in the
trial court and on appeal, Crawford has asserted that the trial court acted
properly in striking substantially all of the Interest Owners=
summary-judgment response because this response purportedly did not direct the
trial court to any specific evidence on the particular elements of their claims
that allegedly raises a fact issue. 
Crawford asserts that the Interest Owners simply attached voluminous
summary-judgment evidence and then summarized it in the response, without
indicating how the evidence raises a genuine issue of material fact.  








Striking a timely-filed
summary-judgment response is a severe and unusual remedy.  If a trial court could properly strike a
nonmovant=s timely summary-judgment
response, then it would be free to ignore that response in granting summary
judgment, and an appellate court reviewing the trial court=s summary
judgment would not be allowed to consider the response on appeal.  Crawford has not cited, and this court has
not found, any rule or case law that would allow a trial court to strike a
timely summary-judgment response because of some perceived or actual
substantive inadequacy.  Even if the
Interest Owners had failed to respond with summary-judgment evidence raising a
fact issue on some of their claims and even if they had attached voluminous
evidence without in any way explaining how the evidence raised a fact issue,
these failures would be reasons for granting summary judgment or for not
reviewing the voluminous evidence; they would not be reasons for striking
substantially all of the Interest Owners=
summary-judgment response.  If a
nonmovant=s response fails to set forth
valid reasons why summary judgment should not be granted and if the motion and
summary-judgment evidence show that there is no genuine issue of material fact
and that the movant is entitled to judgment as a matter of law on the grounds
asserted in the motion, then the trial court should simply grant summary
judgment.  It is improper to go further
and also strike the nonmovant=s
timely-filed summary-judgment response.  

Crawford did not assert special
exceptions alleging that the Interest Owners=
summary-judgment response was unclear, ambiguous, or confusing, a procedural
solution suggested by four justices on the Texas Supreme Court to complain
about deficiencies in summary-judgment responses.  See McConnell v. Southside Indep. Sch.
Dist., 858 S.W.2d 337, 343 (Tex. 1993) (plurality op.) (suggesting, in
plurality opinion, that a movant who is confused by alleged ambiguity in the
nonmovants= response may assert special
exceptions against the response); Toubaniaris v. American Bureau of Shipping,
916 S.W.2d 21, 24 n.3 (Tex. App.CHouston
[1st Dist.] 1995, no writ) (noting that the part of the McConnell opinion
discussing special exceptions practice was not a binding opinion of the Texas
Supreme Court but rather the opinion of Justices Hightower, Doggett, Gammage,
and Spector).  Neither the Texas Supreme
Court nor this court appears to have addressed this issue in a binding
precedent, and we need not decide today the role, if any, of special exceptions
against a nonmovant=s
summary-judgment response.  Nonetheless,
it is important to note in this case that Crawford=s motion
to strike was not based on any recognized ground that might support the
requested relief.  Not only did Crawford=s motion
to strike fail to assert that the response was unclear, ambiguous, or
confusing, but the Interest Owners were not given any opportunity to replead or
amend their response C
something they should have been given if such special exceptions had been
asserted and sustained. 








It is possible that, under certain
unusual circumstances, a trial court might properly strike portions of a
timely-filed summary-judgment response.  Cf.
Herndon v. Campbell, 23 S.W. 980, 981 (Tex. 1893) (holding that, if a
pleading contains impertinent or scandalous language, the trial court may
expunge or strike the offensive language but should not strike the parts of the
pleading that assert valid claims); Sabine & E.T. Ry. Co. v. Broussard,
7 S.W. 374, 377 (Tex. 1888) (stating that trial court should have sustained an
exception to a portion of the petition containing allegations that could have
no bearing on the claims between the parties to the suit).  However, we have found no authority to
support the trial court=s
striking of substantially all of the Interest Owners=
timely-filed summary-judgment response based on its purported inadequacy in
briefing the alleged fact issues. 
Accordingly, we hold the trial court abused its discretion by sustaining
Crawford=s
objections one through four and by striking pages two through twenty-one of the
Interest Owners=
summary-judgment response.  We sustain
the first issue to this extent, and on appeal, we shall consider the Interest
Owners= entire
summary-judgment response.[3]

B.        Did the trial court err in granting a
no-evidence summary judgment as to the damages element of the Interest Owners= claim for breach of
contract based on Crawford=s alleged failure to give
timely notice under the Operating Agreement?

In their second issue, the
Interest Owners assert the trial court erred in granting summary judgment on Crawford=s
no-evidence ground challenging the damages element of their contract claim
based on Crawford=s alleged
failure to give timely notice under the Operating Agreement regarding his
acquisition or right to acquire the Term Assignment (hereinafter ATerm
Assignment Claim@). In
response to a no-evidence ground for summary judgment, the nonmovants need not
marshal their proof; however, their summary-judgment 








response needs to point
out evidence that raises a genuine issue of fact as to the challenged elements.  See Brewer & Pritchard, P.C., 73
S.W.3d at 206B08; Hintz v. Lowe, Nos.
14-03-00979-CV, 14-03-00983-CV, 2004 WL 2359260, at *2 (Tex. App.CHouston
[14th Dist.] Oct. 21, 2004) (mem. op.).  

The Interest Owners= response
in opposition to Crawford=s motion
for summary judgment addresses only the legal standard for traditional motions
for summary judgment.  Although the
response describes much of the evidence filed in response to Crawford=s motion,
it does not state that any of this evidence raises a fact issue as to damages
regarding the Interest Owners= Term
Assignment Claim.  The response does not
state any method of calculating damages or any amount of losses allegedly
resulting from Crawford=s alleged
breach in the Term Assignment Claim. 
Indeed, the response does not use the word Adamage@ or Adamages@ a single
time.  The Interest Owners do state that
they Ahave
affirmatively established each of the elements of their claims against Crawford
with the evidence presented in response to Crawford=s motion.@  They also state that they Ahave
affirmatively established some evidence of each element of all of their claims
against [Crawford], thereby precluding summary judgment.@  The Interest Owners also incorporate by
reference into their summary-judgment response five affidavits and excerpts
from three depositions.  Their
summary-judgment evidence exceeds six hundred fifty pages in length.  Normally, it should not take much for a
summary-judgment response to point out evidence that raises a genuine issue of
fact as to elements challenged by no-evidence grounds.  See Brewer & Pritchard, P.C., 73
S.W.3d at 206B08 (acknowledging that case was a
close call but holding that response met minimum requirements of Rule 166a(i)
and pointed out evidence allegedly raising a fact issue on the challenged
elements).  In Brewer & Pritchard,
P.C., the Texas Supreme Court held that a response with the following
characteristics adequately pointed out evidence allegedly raising a fact issue
as to the plaintiff=s
conspiracy claim: 








!         The response detailed evidence allegedly indicating that one
alleged co-conspirator benifitted from the fee agreement of the other alleged
co-conspirator, and after identifying this evidence, the response stated that Athese facts clearly
evidence a . . . scheme to funnel half of the referral funds through [one
alleged co-conspirator] and then, back to [the other alleged co-conspirator].@ 

!         The response stated that the plaintiff=s conspiracy claim was
based on one alleged co-conspirator=s breach of a fiduciary
duty owed to the plaintiff, and then the response set forth argument and
authorities regarding the alleged fiduciary duty, including a statement that
third parties may be liable for aiding and abetting a breach of fiduciary
duty.  The response then pointed to facts
that allegedly showed a breach of fiduciary duty by one of the alleged
co-conspirators.

Id.








The Interest Owners= response
is more deficient as to the damages element of the Term Assignment Claim than
was the plaintiff=s response
in the Brewer & Pritchard, P.C. case.  The Interest Owners state generally that the
summary-judgment evidence raises fact issues as to all of the elements of all
of their claims, and they incorporate by reference more than six hundred fifty
pages of evidence.  On appeal, the
Interest Owners assert that an affidavit from Jonathan Preston raises a fact
issue as to the challenged damage element; however, they never made this
assertion in their summary-judgment response. 
We conclude that the response in this case is similar to the one this
court found deficient in the Hintz case. 
See Hintz, 2004 WL 2359260, at *2B5.  If we were to determine that the
summary-judgment response in this case were sufficient under Rule 166a(i), then
we would be holding that a nonmovant can avoid summary-judgment by filing
voluminous and complicated summary-judgment evidence along with a response that
states generally that a genuine fact issue has been raised as to each
element.  In that event, the trial court
would have the onerous task of searching the summary-judgment evidence to see
if a genuine issue of fact had been raised as to each challenged element.  Such a holding would place an unreasonable
burden on the trial court and would violate the requirement of Rule 166a(i)
that the response must point out evidence that raises a genuine issue of fact
as to each challenged element.  See
Hintz, 2004 WL 2359260, at *2B3; see
also U.S. Rentals, Inc. v. Mundy Serv. Corp., 901 S.W.2d 789, 793B94 (Tex.
App.CHouston
[14th Dist.] 1995, writ denied). 
Therefore, we conclude that the trial court did not err in granting
summary judgment as to the Term Assignment Claim because the Interest Owners= response
does not point out evidence that allegedly raises a genuine issue of fact as to
the damages element of this claim. 
Accordingly, we overrule the Interest Owners= second
issue.  

C.        Is
the fourth issue on appeal, relating to the Overriding Royalty claim, moot?

In the
fourth issue on appeal, San Saba asserts that the trial court erred in granting
summary judgment as to its claim under the Operating Agreement regarding
Crawford=s failure
to convey the Overriding Royalty to Blacklake (hereinafter AOverriding
Royalty Claim@).  Before we address this issue, we first
address Crawford=s
assertion that this part of the appeal is moot as a result of San Saba=s alleged
execution of a release with David Doughtie, Sandra Doughtie, and Doughtie
Exploration Company (hereinafter the ADoughtie
Release@) and
also as a result of San Saba=s alleged
execution of an Assignment of Overriding Royalty Interest.  San Saba allegedly executed both of these
documents in May of 2003, after the trial court granted Crawford=s motion
for summary judgment.  The clerk=s record
does not contain these documents. 
Accordingly, we cannot consider these matters unless they deprive this
court of jurisdiction.

Crawford asserts that San Saba=s
execution of these documents deprives this court of jurisdiction as to the
fourth issue by rendering it moot. 
Crawford urges that these two documents moot this issue because they
operate to fully compensate San Saba for any alleged damages under the
Overriding Royalty Claim.  Crawford also
contends that, by executing these documents, San Saba has released, waived, and
is now estopped by its actions from asserting the Overriding Royalty Claim.








Even if we presume for the sake
of argument that these documents have the effect alleged by Crawford, we
conclude that this would not moot the fourth issue.  There is still a live controversy between San
Saba and Crawford as to whether the trial court properly granted summary
judgment on San Saba=s
Overriding Royalty Claim, as well as whether San Saba=s
execution of the Doughtie Release and the Assignment of Overriding Royalty
Interest prejudiced this claim. 
Generally, an appeal is moot when the court=s action
on the merits cannot affect the rights of the parties. VE Corp. v. Ernst
& Young, 860 S.W.2d 83, 84 (Tex. 1993). 
In the Overriding Royalty Claim, San Saba seeks a money judgment. Even
if Crawford=s arguments are correct
concerning these two documents, on remand the trial court still can grant relief
by rendering a take-nothing judgment.  If
the trial court disagrees with Crawford and finds in favor of San Saba on this
claim, it still can render a money judgment in San Saba=s
favor.  The cases cited by Crawford
regarding the Aone satisfaction rule@ do not
support the proposition that the Doughtie Release and the Assignment of
Overriding Royalty Interest moot the fourth issue under the facts in this
case.  In the cited cases, the
application of the Aone
satisfaction rule@ resulted
in a settlement credit which mitigated some or all of the plaintiff=s damages
against the nonsettling defendant.  See,
e.g., Buccaneer Homes of Ala., Inc. v. Pelis, 43 S.W.3d 586, 590B91 (Tex.
App.CHouston
[1st Dist.] 2001, no pet.) (applying Aone
satisfaction rule@ to
negate all of plaintiff=s damages
against nonsettling defendant).  The
application of this rule does not moot any issue in the case. See, e.g., id.
(reversing judgment and rendering take-nothing judgment based on Aone
satisfaction rule@ rather
than dismissing case as moot). 
Accordingly, we reject Crawford=s
mootness argument and deny his motion to dismiss.

D.        Did the trial court err in granting
summary judgment as to San Saba=s claim regarding the
Overriding Royalty?








In the fourth issue, San Saba
asserts that the trial court erred in granting summary judgment as to its
Overriding Royalty Claim.  Under the Term
Assignment, Crawford acquired an interest in the Lease, which is Aa lease
interest . . . affecting lands within the AMI@ as
stated in the Operating Agreement. 
Therefore, regardless of any election to purchase a proportionate interest,
the Operating Agreement required Crawford to convey to Blacklake the Overriding
Royalty.  Crawford does not dispute this
obligation; however, in the trial court and on appeal, Crawford has asserted
that he did not have to comply with his obligation under the Operating
Agreement to convey the Overriding Royalty to Blacklake because Blacklake
agreed in a settlement agreement among other parties to convey this same
interest to David Doughtie.  At his
deposition, Crawford testified that he conveyed this Overriding Royalty to
Doughtie because Doughtie asked him to do so. 
Crawford testified that he relied on representations by Doughtie and Doughtie=s counsel
that Doughtie was entitled to receive this interest under the settlement
agreement signed by Doughtie and Blacklake. 
Crawford was not a party to this settlement agreement.  Crawford did not ask for or receive a copy of
this settlement agreement, nor did he make an independent investigation to
determine whether Doughtie was entitled to this interest. 

We must determine whether
Crawford has shown that the December 2, 1997 settlement agreement among
Blacklake, Doughtie, and others (hereinafter ASettlement
Agreement@) negates San Saba=s
Overriding Royalty Claim as a matter of law. 
The Settlement Agreement reads in material part as follows:

Blacklake . . . will
assign, upon receipt of further interests in the properties described in
Exhibit AA@ and Schedule 3 attached
hereto and incorporated herein by reference, an overriding royalty interested
[sic] based upon the sliding scale attached hereto as Exhibit AB,@ proportionately reduced
to the net percentage of the 8/8ths acquired and retained by Blacklake . . . .

. . . 

Anything to the contrary
notwithstanding, this Agreement shall not be construed as releasing, altering
or impeding the rights and obligations of the Parties under the . . .
[Operating Agreement]. . . .








The
schedules and exhibits attached hereto are used herein to merely reflect the properties
and Doughtie=s interest therein. It is
understood that Blacklake . . . [has] other overriding royalty and working
interests not reflected thereon.

In his affidavit attached to
Crawford=s motion,
David Doughtie testified as follows:

In 1999, [Crawford]
transferred to me an overriding royalty interest, which [Blacklake] would
normally have been entitled to under the terms of the [Joint Operating
Agreement] in the amounts set out in the three schedules attached to and made a
part of my settlement agreement with [Blacklake] and others.  Previously, Blacklake had assigned its
interest in that overriding royalty interest to me pursuant to the settlement
agreement . . .  The overriding royalty
interest transferred to me was exactly the amount under the Settlement
Agreement, assigned to Doughtie by Blacklake. 
Rather than having two conveyances, being one from [Crawford] to
[Blacklake] and subsequently another to me, it was determined to make the
conveyance directly from Crawford to me. [Crawford] did not transfer any other
overriding royalty interest in the 605 acre tract to David [sic] or my wife,
Sandra Doughtie.

Doughtie=s
affidavit simply states that Blacklake assigned the Overriding Royalty to
Doughtie in the Settlement Agreement, without explaining how the Settlement
Agreement covers the Lease.  These
conclusory statements by Doughtie constitute no evidence that could support the
trial court=s summary judgment.  See Coastal Transport Co., Inc. v. Crown
Cent. Petroleum Corp., 136 S.W.3d 227, 232 (Tex. 2004).  In both his motion in the trial court and his
brief on appeal, Crawford merely concludes that the Settlement Agreement
constitutes an assignment by Blacklake of the Overriding Royalty to Doughtie.
Crawford does not demonstrate how the Settlement Agreement covers the
Lease.  In the only section that could
possibly apply to these facts, the Settlement Agreement states that Doughtie
shall receive overriding royalty interests upon Blacklake=s Areceipt
of further interests in the properties described in Exhibit >A= and
Schedule 3 . . . .@ The
undisputed summary-judgment evidence shows the following: 








!         Except for referring to various leases on Exhibit AA@ of the Settlement
Agreement (hereinafter AExhibit A@), Schedule 3 does not
describe any properties.

!         The recording information is listed for all of the leases on
Exhibit A, and none of that information matches the recording information for
the Lease.  

!         The acreage is listed for all of the leases on Exhibit A,
and none of the acreage amounts equals the acreage of the Lease.  

!         The Lessee listed for all of the leases on Exhibit A is Pursuit
Exploration Company.  There is no
evidence in the record showing that Crawford or Pursuit had any interest in the
Lease before August 15, 1998; whereas the Settlement Agreement was effective as
of December 2, 1997. 

!         Only one of the leases on Exhibit A C Lease # TX 100-08 C has the same lessor
information as the Lease.

At oral argument, Crawford=s counsel
stated that Crawford bases his argument on the fact that the acreage for Lease
#TX 100-08 listed on Exhibit A is part of the acreage covered by the
Lease.  In his motion for summary
judgment and in his appellate brief, Crawford does not cite any
summary-judgment evidence that supports this assertion.  In his motion to dismiss for mootness filed
after oral argument, Crawford asserts for the first time that his affidavit
establishes that the approximately 605 acres covered by the Lease includes the
80 acres covered by Lease #TX 100-08 on Exhibit A.  The relevant part of Crawford=s
affidavit states the following:

I have acquired oil and
gas leasehold interests covered by the [Operating Agreement] at two times in my
lifetime.  The first occasion was the
interests I had secured prior to October 16, 1997, which are described in a
Stipulation of Interest and Cross-Conveyance, which was signed by all of the
Plaintiffs in this lawsuit on October 6 and 8, 1997. . . .








Even if we presume that Acovered
by the [Operating Agreement]@ is the
same as Awithin
the AMI,@ Crawford
states that he secured interests in the AMI before October 16, 1997, and that
these interests are described in the Stipulation of Interest and
Cross-Conveyance (hereinafter AStipulation
of Interest@).  The Stipulation of Interest does not describe
any interests secured by Crawford; rather, it recites that the present owners
of various oil and gas interests, including Crawford, wish to resolve
inconsistencies among their interests to achieve the ownership interests
reflected in the Stipulation of Interest. 
Crawford does not state in his affidavit that the approximately 605
acres covered by the Lease includes the 80 acres covered by Lease #TX 100-08 on
Exhibit A of the Settlement Agreement. 
Crawford does not testify that any of the leases listed on Exhibit A are
in the AMI.   








After reviewing this
traditional-summary-judgment ground, we conclude that Crawford=s  motion and summary-judgment evidence do not
facially establish his right to summary judgment by showing that, as a matter
of law, the Settlement Agreement negates liability and damages as to San Saba=s
Overriding Royalty Claim.  See
Dolcefino, 19 S.W.3d at 916.  The
Lease is not listed in Exhibit A.  The
summary-judgment evidence does not prove, as a matter of law, that any of the
leases listed on Exhibit A are within the AMI. 
Crawford=s motion
and the summary-judgment evidence do not prove as a matter of law that
Blacklake=s receipt of the Overriding
Royalty would have been the receipt of Afurther
interests in the properties described in [Exhibit A].@  Furthermore, section 7 of the Settlement
Agreement states that, notwithstanding anything to the contrary in the
Settlement Agreement, that agreement shall not be construed as releasing,
altering, or impeding the rights and obligations of the parties under the
Operating Agreement.  Crawford=s
construction of the Settlement Agreement would release, alter, or impede
Blacklake=s right under the Operating
Agreement to receive the Overriding Royalty. Crawford did not prove as a matter
of law that the Settlement Agreement relieves him of his contractual obligation
under the Operating Agreement to convey the Overriding Royalty to
Blacklake.  Therefore, the trial court
erred in granting summary judgment on Crawford=s grounds
based on the Settlement Agreement.[4]         Crawford
also asserts that an Assignment of Overriding Royalty Interest dated April 13,
1999 (hereinafter AAssignment@)
constitutes a specific agreement by San Saba that Crawford could convey the
Overriding Royalty to David Doughtie. 
Based on the unambiguous language of this document, we conclude
otherwise.  The only evidence upon which
Crawford relies for this argument is the Assignment itself.  Crawford claims that the Assignment states
that the Overriding Royalty is owned by Doughtie.  We find no such statement in the Assignment.  In the Assignment, Burlington Resources Oil
& Gas Company conveys an overriding royalty interest in and to the lands
covered by four different groups of leases, none of which includes the
Lease.  Crawford has not shown that the
overriding royalty conveyed in the Assignment has any connection with the
overriding royalty he is required to convey to Blacklake in the Lease. Crawford
has not shown that the leases listed in the Assignment cover the same acreage
as the Lease, nor has he shown how San Saba=s signing
of the Assignment and acceptance of these overriding royalty interests
constitutes an agreement by San Saba that it was proper for Crawford to have
conveyed the Overriding Royalty to Doughtie instead of Blacklake or San
Saba.  Further, the language of the
Assignment does not release or negate San Saba=s
contract claim under the Operating Agreement regarding Crawford=s failure
to convey the Overriding Royalty to Blacklake. 
Therefore, the trial court erred to the extent it granted summary
judgment on this claim based on the Assignment. 









Crawford also asserts that there
is no evidence of damages under San Saba=s
Overriding Royalty Claim because Blacklake previously had assigned the
Overriding Royalty to Doughtie.  Because
this ground is also dependent upon Crawford=s
arguments under the Settlement Agreement and the Assignment, we conclude that
the trial court erred in granting summary judgment on this ground for the same
reasons mentioned above.  Accordingly, we
sustain the fourth issue and reverse and remand as to San Saba=s
contract claim under the Operating Agreement regarding Crawford=s failure
to convey the Overriding Royalty to San Saba=s
predecessor, Blacklake.[5]  

E.        Did the trial court err in granting
summary judgment as to the Interest Owners= fraud claims?

In their third issue, the
Interest Owners argue the trial court erred in granting summary judgment as to
their fraud claims.  The Interest Owners
assert that in their live petition they pleaded fraud claims against Crawford
and that Crawford=s motion
for summary judgment did not address their fraud claims.  Crawford asserts that the Interest Owners= live
petition did not contain any fraud claim against Crawford.  The trial court previously had sustained a
special exception and required the Interest Owners to replead without alleging
an ostensible claim for conspiracy to breach a contract.  The Interest Owners complied.  Because our record shows that the trial court
sustained no special exceptions as to any fraud claims or as to any alleged
failure to plead claims with particularity, we review the Interest Owners= petition
liberally in their favor to determine if they pleaded any fraud claims.  See Boyles v. Kerr, 855 S.W.2d 593,
600B01 (Tex.
1993).  








In liberally construing the Interest Owners= Eighth
Amended Petition, we must find that the petition contains any claims that
reasonably may be inferred from the specific language used in the petition,
even if the petition fails to state all of the elements of that claim.  SmithKline Beecham Corp. v. Doe, 903
S.W.2d 347, 354B55
(Tex.1995);  Boyles, 855 S.W.2d at
600B01.
Nonetheless, we cannot use a liberal construction of the petition as a license
to read into the petition a claim that it does not contain.  See Toles v. Toles, 113 S.W.3d 899,
911 (Tex. App.CDallas 2003, no pet.).  The petition must give Crawford fair notice
of the claims being asserted, and, if we cannot reasonably infer that the
petition contains a fraud claim, then we must conclude the petition did not
contain this claim, even under our liberal construction.  See SmithKline Beecham Corp., 903 S.W.2d
at 354B55; Boyles,
855 S.W.2d at 600B01.   The Eighth Amended Petition does not allege
any material misrepresentation by Crawford. 
The petition alleges that the Interest Owners suffered damages as a
result of Crawford=s breach
of the Operating Agreement by failing to give notice immediately and with all
pertinent details and information regarding the Term Assignment.  In the midst of lengthy factual allegations,
the petition states the following:

Crawford=s offer of the 605 acre
lease to the Working Interest Group was a fraudulent and sham transaction
designed by Crawford and McCord, and perhaps others, to induce Plaintiffs into
not immediately electing to participate in the offering, so that Crawford could
retain greater interests in the 605 acre tract and secretly share them with [O=Sullivan Oil and Gas
Company], [Scully Oil & Gas Co.] and other members of their Program, or
alternatively, which he was secretly obliged to share with them.  Crawford and McCord enjoyed a close business
and sometimes personal relationship with Chris O=Sullivan and Chris Scully
and their actions with respect to the 605 acre lease were part of their plan
and scheme to allow O=Sullivan and Scully to
benefit from the mineral development in the AMI, and constituted an illegal
agreement, or conspiracy between them for the purpose of defrauding Plaintiffs.








The Interest Owners claim that
this paragraph is sufficient to plead fraud against Crawford.  Although this petition names McCord as a
defendant, it does not name O=Sullivan
Oil and Gas Company, Scully Oil & Gas Co., O=Sullivan,
or Chris Scully as defendants.  And
though this paragraph does characterize Crawford=s August
26, 1998 notice under the Operating Agreement as Aa
fraudulent and sham transaction,@ it does
not assert that this notice was a material misrepresentation.  Later in the petition, the Interest Owners
assert that Crawford=s notice
breached the Operating Agreement, and they seek to recover lost profits
allegedly resulting from this alleged breach. 
In the subsequent Acauses of
action,@ section
of the petition, the Interest Owners allege breach of contract and various
torts, including breach of fiduciary duty, against Crawford.  They do not allege any fraud claim against
Crawford in this section.  In the same
section, the Interest Owners assert a fraud claim against McCord.  In alleging their entitlement to punitive
damages against McCord, the Interest Owners assert that A[McCord=s]
actions were fraudulent, wilful[,] and malicious.@  In contrast, in alleging their entitlement to
punitive damages against Crawford, the Interest Owners merely state that ACrawford=s actions
were wilful and malicious,@ with no
mention of fraud.  In the context of the
allegations in the Eighth Amended Petition, it cannot reasonably be inferred
that this petition contains a fraud claim against Crawford, even under a
liberal construction.  See SmithKline
Beecham Corp., 903 S.W.2d at 354B55
(holding that, even under a liberal construction, the pleading did not allege
misrepresentation);  Boyles, 855
S.W.2d at 600B01 (holding that, even under a
liberal construction, the pleading did not allege grossly negligent infliction
of emotional distress); Toles, 113 S.W.3d at 911 (holding that, even
under a liberal construction, the pleading did not allege fraud).  Accordingly, we overrule the Interest Owners= third
issue.

F.        Have the Interest Owners sufficiently
briefed their fifth issue relating to alleged error by the trial court in
granting summary judgment on Aother grounds@?

In their fifth issue, the
Interest Owners assert the trial court erred in granting summary judgment on Aother
grounds.@  In their one-paragraph argument under this
issue, the Interest Owners state that they believe there are other grounds
which would support reversal of the trial court=s
judgment in addition to those made the subject of their first four issues, and
they ask this court to reverse this judgment on any applicable grounds at law
or in equity.  The Interest Owners cite
one case for the proposition that summary judgment is not intended to deprive
litigants of their right to a full hearing on the merits of any real fact
issue.  The Interest Owners state that
their claims are not patently unmeritorious, and that, if this judgment is not
reversed for trial, manifest injustice would result to the Interest
Owners.  The Interest Owners then Apray for
equitable relief and a reversal of the [trial court=s
judgment] in full.@  The Interest Owners do not cite to any part
of the record.








An appellant=s brief
must contain a clear and concise argument for the contentions made, with
appropriate citations to authorities and to the record.  Tex.
R. App. P. 38.1(h).  We must
interpret this requirement reasonably and liberally.  Republic Underwriters Ins. Co. v. Mex-Tex,
Inc., 150 S.W.3d 423, 427 (Tex. 2004). 
Nonetheless, parties asserting error on appeal still must put forth some
specific argument and analysis showing that the record and the law supports
their contentions.  See Tex. R. App. P. 38.1(h); Deutsch v.
Hoover, Bax & Slovacek, L.L.P, 97 S.W.3d 179, 198B99 (Tex.
App.CHous.
[14th Dist.] 2002, no pet.).  The
Interest Owners cite no part of the record and make no specific argument under
their fifth issue.  They assert only that
there are additional grounds to reverse the trial court=s
judgment and that the entire summary judgment should be reversed to avoid
injustice.  Even under a liberal
construction, this contention is not sufficient to articulate a clear and
concise argument as to why we should reverse the trial court=s
judgment.  Further, the Interest Owners
have not cited to any part of the record. 
See Deutsch, 97 S.W.3d at 198B99.  Because it is inadequately briefed, we
overrule the fifth issue. 

IV.  Conclusion








San Saba=s alleged
execution of the Doughtie Release and the Assignment of Overriding Royalty
Interest does not moot the appellate issue as to whether the trial court erred
in granting summary judgment as to San Saba=s claim
under the Operating Agreement regarding Crawford=s failure
to convey the Overriding Royalty to Blacklake. 
The trial court did not err in granting summary judgment as to the Term
Assignment Claim because the Interest Owners did not point out in their
summary-judgment response any evidence allegedly raising a genuine fact issue
as to the challenged element of damages. 
The trial court did not err in granting summary judgment as to the
Interest Owners= alleged
fraud claims against Crawford because, even under a liberal construction, their
live pleading did not contain any such claims. 
The Interest Owners have inadequately briefed their fifth issue in which
they assert that the trial court erred in granting summary judgment on Aother
grounds.@  The trial court abused its discretion by
striking substantially all of the Interest Owners=
timely-filed summary-judgment response based upon its determination that the
response was substantively inadequate. 
Because the trial court erred in granting summary judgment as to San
Saba=s
Overriding Royalty Claim, we reverse the trial court=s
judgment to this extent, and we sever and remand this part of the trial court=s
judgment for further proceedings consistent with this opinion.  We affirm the remainder of the judgment.

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and Opinion filed June 21, 2005.

Panel consists of Justices Anderson, Hudson, and Frost.

 

 











[1]  On appeal, the
Interest Owners do not challenge the first three grounds stated above.





[2]  Crawford also
filed a motion to exclude the expert testimony of Jonathan Preston. The trial
court, however, did not grant this motion, and the issues raised by it are not
before us.





[3]  The Interest
Owners also have challenged the trial court=s
sustaining of Crawford=s objections five through fifteen to various pieces of
summary-judgment evidence.  However,
these rulings do not affect our disposition of the issues on appeal, so we do
not address the remainder of the first issue, which challenges the trial court=s rulings on these objections.





[4]  Crawford also
argues that handwritten changes to Schedules 1, 2, and 3 of the Settlement
Agreement further support his position that the Settlement Agreement covers the
Lease.  However, this does not follow
because these schedules simply apply as to the leases listed in Exhibit A; they
do not affect what is described in Exhibit A.





[5]  We note that
we have not ruled on the effect of San Saba=s
alleged execution, in May of 2003, of the Doughtie Release and the Assignment
of Overriding Royalty Interest, other than holding that these documents do not
moot the fourth issue in this appeal.  We
do not take any position on the effect, if any, of these documents on the
substance of San Saba=s Overriding Royalty Claim.